**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JESSE BRUMBAUGH, et al.,** | **:** | Case No. 1:25-cv-00269-DRC |
| | **:** | |
| Plaintiffs, | **:** | Judge Douglas R. Cole |
| | **:** | |
| v. | **:** | |
| | **:** | |
| **BARRETT SINGLETON, et al.** | **:** | |
| | **:** | |
| Defendants. | **:** | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

Plaintiffs Jesse Brumbaugh and Jennifer Foster's (jointly, "Plaintiffs") Motion for Partial Summary Judgment on Liability ("Motion") on their claim that Defendants Barrett and Claire Singleton (jointly, "Defendants" or the "Singletons") "knowingly" violated the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d (the "RLPHRA") must be denied because they fail to satisfy their burden under Fed. R. Civ. P. 56(a) of demonstrating the absence of a genuine dispute of material fact.

A memorandum in support is attached hereto.

1

<u>**MEMORANDUM IN SUPPORT**</u>

## I.      INTRODUCTION

The Court previously dismissed four of the five claims asserted by Plaintiffs and on behalf of their minor children relating to lead paint in a home sold to them by the Singletons. *See* Order Mtn. Dismiss, Doc. 16 at PageID 420.  Plaintiffs' sole remaining claim in this case is premised on an alleged violation of 42 USC § 4852d, the RLPHRA. Plaintiffs assert their claim against the Singletons pursuant to the civil cause of action created by 42 USC § 4852d (b)(3).

Among the RLPHRA's express requirements, is one that imposes on a seller the obligation to provide to the buyer "any lead hazard evaluation report available to the seller." § 4852d(a)(1)(B). By its express terms, liability only attaches in a civil cause of action created by 42 U.S.C. § 4852d(b)(3) when a person "knowingly violates" the provisions of the statute. In the absence of a "knowing" violation, there is no federal cause of action.

To prevail on their Motion, Plaintiffs must establish the absence of a genuine issue of material fact that the Singletons "knowingly" violated the RLPHRA. However, their Motion fails in that regard and must therefore be denied, particularly viewing all evidence in the light most favorable to the Singletons and drawing all reasonable inferences in their favor, as the non-moving party.

Plaintiffs' Motion further fails because their legal analysis of whether a "knowing" violation occurred here is critically flawed and inexplicably omits the relevant portion of the legal standard.

Plaintiffs misleadingly assert that "'knowingly' requires only knowledge of one's conduct". Motion, Doc. 22 at PageID 653, 661.  That is incorrect and incomplete.

2

It is well-established that for purposes of establishing liability under 42 U.S.C. § 4852d(b)(3), "knowingly" "is to be construed as meaning that the 'defendant was aware of his or her conduct *and that defendant did not perform it merely through ignorance, mistake or accident*.'" *G.M.M. v. Kimpson*, 92 F. Supp. 3d 53, 71 (E.D.N.Y. 2015), quoting *Smith v. Coldwell Banker Real Est. Servs.*, 122 F. Supp. 2d 267, 273 (D. Conn. 2000) (emphasis added). "This knowledge standard, a higher burden than mere negligence, was intentionally chosen by Congress." *Id*. A defendant further cannot be held liable for a violation of the RLPHRA for "inadvertence or inattentiveness". *Smith*, 122 F.Supp. 2d 273. Indeed, contrary to Plaintiffs' arguments, ignorance plainly precludes liability under the RLPHRA.

Plaintiffs' Motion fails to establish beyond dispute that any alleged violation was committed "knowingly" and not through "ignorance, mistake or accident", "mere negligence", or "inadvertence or inattentiveness". They provide no evidence of the Singletons' knowledge, intent, or state of mind, including whether they knew of their obligations under the RLPHRA at the time of the sale, which is included in courts' analyses of a "knowing" violation. *Smith*, 122 F.Supp. 2d 274. Further, such an inquiry is for a jury and therefore inappropriate for summary judgment. *Id.* The Motion must be denied on that basis. [1]

The undisputed facts of the case compel a finding that any alleged technical violation was the result of "ignorance, mistake or accident", "inadvertence or inattentiveness", and/or "mere negligence", for which the Singletons cannot be held liable. The affidavits of the Singletons establish that they were under the belief and understanding that they were only required to provide any lead paint records or reports in their possession. Affidavit of Barrett Singleton at ¶5, Doc. 23-1 at PageID 677-678; Affidavit of Claire Singleton at ¶5, Doc. 23-2 at PageID 680-681.

---

[1] It is notable that the only discovery Plaintiffs elected to conduct prior to filing their premature Motion was submitting two basic Interrogatories and a set of Requests for Admission.

They did not have the documents at issue in their possession at the time they completed the lead disclosure form as part of the sale. B. Singleton Aff. at ¶6, Doc. 23-1 at PageID 678; C. Singleton Aff. at ¶6, Doc. 23-2 at PageID 681.  In fact, they checked the box on the lead disclosure form stating "[s]eller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing" based upon the fact that they did not have the documents at issue in their possession and based upon their belief that they were only required to provide records and reports in their possession at that time. B. Singleton Aff. at ¶7, Doc. 23-1 at PageID 678; C. Singleton Aff. at ¶7, Doc. 23-2 at PageID 681.

It is further undisputed that the Singletons expressly disclosed to Plaintiffs that lead-based paint hazards were present, which supports an inference that any technical violation was the product of "ignorance, mistake or accident", "inadvertence or inattentiveness", and/or "mere negligence". This inference must be drawn in the Singletons' favor as the non-movant, all evidence must be viewed in the light most favorable to them.  Plaintiffs therefore fail to establish entitlement to summary judgment.

Plaintiffs' attempt to exploit the RLPHRA disclosure requirements to create a liability trap is also unsupported under the circumstances.  Plaintiffs' notably fail to cite any legal authority involving the present undisputed facts where a seller who expressly discloses the presence of lead-based paint hazards, discloses participation in a lead abatement program, and discloses health department clearance nonetheless violates the RLPHRA by failing to produce the specific underlying records not in their possession at the time.

The statute requires sellers to "provide the purchaser any lead hazard evaluation report available to the seller." 42 U.S.C. § 4852d(a)(1)(B).  The statutory text is clear and unambiguous that the RLPHRA's disclosure obligation requires analysis of the "possession" and "availability"

of the documents at issue. *Id*.; 42 USC § 4852d (a)(3)  Whether a report was "available to the seller" is a factual determination that depends on possession and accessibility at the relevant time.  But Plaintiffs fail to adduce any evidence in that regard.

Further, Plaintiffs' attempted exploitation of the RLPHRA is contrary to the purpose and spirit of the statute.  The RLPHRA "is a disclosure statute" that is knowledge-based and availability-based, not a document-production statute or a strict liability regime. *Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affs*., 426 F.3d 241, 245 (3d Cir. 2005).  Its purpose is to ensure that purchasers have information and notice about lead-based paint hazards and an opportunity to "see for themselves" whether they want to occupy premises that have known lead-based paint hazards before binding themselves to a purchase. *See Mason v. Morrisette*, 403 F.3d 28, 32 (1st Cir. 2005).

Plaintiffs indisputably had this information and notice and the opportunity to conduct a lead-related inspection of the disclosed hazards prior to entering into the purchase contract with the Singletons, but they elected to proceed anyway.  The Singletons disclosed the presence of lead-based paint hazards, disclosed abatement and health department clearance, and Plaintiffs expressly acknowledged those hazards and waived a lead-based paint inspection.

The RLPHRA's purpose has been served and the Court should deny Plaintiffs' attempt to manufacture liability from the non-production of documents whose substance was disclosed.

## II.    FACTS

The facts material to this brief are primarily set forth below and in the Singletons' Response to Plaintiffs Proposed Undisputed Facts.

Plaintiffs misstate a number of "facts" in their Motion that lack evidentiary support, which must be addressed at the outset.  First, Plaintiffs inaccurately state the Singletons

"received" and that "[the Singletons] admit that they received" the documents at issue, but there is no such admission by Defendants and no evidence in the record of receipt. Motion, Doc. 22 at PageID 652, 663.  This "fact" is not even included in Plaintiffs' Proposed Undisputed Facts. Motion, Doc. 22-1 at PageID 668-672.  The Singletons admitted only that these documents were "issued" by the City of Cincinnati Health Department– there is no present admission or evidence of receipt of the documents, that the documents were in their possession at the time of the sale, nor that the Singletons ever reviewed the documents. Def. Responses at RFA #4, #7, Doc. 21-1 at PageID 562-563.

Plaintiffs also inaccurately state that the Singletons "affirmatively certified that no such records existed." Motion, Doc. 22 at PageID 663.  But the Singletons never made a certification regarding the "existence" of any documents and there is no evidence of such a certification. Rather, the Singletons certified in the lead disclosure form that no records were "available to the seller" and in their "possession". Aff. of J. Foster, Doc. 21-3 at PageID 649.

Finally, Plaintiffs contend that the Singletons never "informed Plaintiffs about" the Notice of Compliance. SUF #22, Doc 22-1 at PageID 672. But in the lead disclosure form, the Singletons disclosed that "[a]ll friction surfaces have been cleared by Cincinnati Health Dept". Aff. of J. Foster, Doc. 21-3 at PageID 649.  This statement informed and put Plaintiffs on notice of the involvement of the Cincinnati Health Department, the substance of the Notice of Compliance, and of the fact that the Cincinnati Health Department conducted a clearance examination, especially when viewed in a light most favorable to the Singletons as the non-movant.

### III.    SUMMARY JUDGMENT STANDARD

6

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (c).  As the moving party, Plaintiffs bear the burden to show that no such genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). The evidence must be viewed in the light most favorable to the Singletons, as the non-moving party, and all reasonable inferences must be drawn in their favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *See id*.  The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law. *Id*. at 251-52.

Here, the evidence in the record is far from being "one-sided" and in fact demonstrates that the Singletons did not "knowingly" violate the RLPHRA and the Motion must be denied.

### IV.    ARGUMENT

#### A.  Plaintiffs fail to establish the Singletons "knowingly" violated the RLPHRA

**a.  A "knowing" violation of the RLPHRA requires that a defendant be "aware of his or her conduct" and also that they "did not perform it merely through ignorance, mistake or accident", nor through "inadvertence or inattentiveness" or mere negligence**

The legal standard for a "knowing" violation under the RLPHRA was interpreted and discussed in the case of *Smith v. Coldwell Banker Real Esta*te, 122 F.Supp. 2d 267, 273 (2000). Plaintiffs extensively cite *Smith* in support of their mistaken argument that the Singletons "only" had to be aware of their conduct to "knowingly" violate the RLPHRA. Motion, Doc. 22 at PageID 661.

7

However, the Plaintiffs' entire argument and analysis of this "knowing" standard is critically flawed due to a glaring omission.  In *Smith*, the court held that:

> … the [RLPHRA] only imposes civil liability for "knowingly violating" one of the [RLPHRA]'s requirements, *they [a defendant] cannot be liable for their inadvertence or inattentiveness*, but only if the evidence persuades the factfinder that the violation was committed "knowingly." "Knowingly" as commonly used and interpreted means that defendant was aware of his or her conduct *and that defendant did not perform it merely through ignorance, mistake or accident*.

*Smith*, 122 F.Supp. 2d 273 (emphasis added).

Inexplicably, Plaintiffs truncate this quote and omit the relevant portion of the legal standard enumerated in *Smith*.  A defendant not "knowingly" violated the RLPHRA where they "did not perform [the violating conduct] merely through ignorance, mistake or accident".  This is a critical flaw.

Plaintiffs cite other courts that allegedly "agree that the 'knowingly' standard 'is to be construed as meaning that the defendant was aware of his or her conduct'", but review of these authorities highlights their critical flaw and entirely contradicts their argument. Motion, Doc. 22 at PageID 662.

Each of the courts cited by Plaintiff expressly held that "knowingly" requires both "that defendant was aware of his or her conduct *and that defendant did not perform it merely through ignorance, mistake or accident*." *G.M.M. v. Kimpson*, 92 F. Supp. 3d 53, 71 (E.D.N.Y. 2015) ("'Knowingly' is to be construed as meaning that the 'defendant was aware of his or her conduct *and that defendant did not perform it merely through ignorance, mistake or accident*.'"); *Benton v. Berkshire Richmond LLC*, No. 3:23CV704, 2024 U.S. Dist. LEXIS 163924, *7 (E.D. Va. Sep. 11, 2024) ("'Knowingly' is to be construed as meaning that the 'defendant was aware of his or her conduct *and that defendant did not perform it merely through ignorance, mistake or accident*.'"); *Pellegrini v. Century 21*, No. 05-30077, 2007 U.S. Dist. LEXIS 54838, *21 (D.

Mass. Jun. 29, 2007) ("'Knowingly' as commonly used and interpreted means that defendant was aware of his or her conduct *and that defendant did not perform it merely through ignorance, mistake or accident.*") (all emphasis added and internal citations omitted).

Plaintiffs further mistakenly assert that "Defendants' professed ignorance of their legal obligation is therefore beside the point." Motion, Doc. 22 at PageID 664. But the foregoing decisions establish that they are plainly wrong. Ignorance precludes RLPHRA liability.

Plaintiffs also incorrectly argue that the *Smith* Court "rejected an argument that defendants under the [RLPHRA] 'cannot be liable for their inadvertence or inattentiveness.'" Motion, Doc. 22 at PageID 661. But the *Smith* Court actually agreed with that argument:

> Alternatively, the defendants oppose summary judgment on the grounds that civil liability may not be imposed against them absent evidence of their intent or knowledge of noncompliance. *They accurately contend that since the statute only imposes civil liability for "knowingly violating" one of the Act's requirements, they cannot be liable for their inadvertence or inattentiveness*, but only if the evidence persuades the factfinder that the violation was committed "knowingly."

*Smith*, 122 F.Supp. 2d 273 (emphasis added). Again, Plaintiffs' argument is blatantly wrong and the Singletons "cannot be liable for their inadvertence or inattentiveness". *See Pellegrini*, 2007 U.S. Dist. LEXIS 54838, *21-22 (citing *Smith's* observation that "under § 4852d, defendants 'cannot be liable for their inadvertence or inattentiveness'").

Further, Plaintiffs incorrectly assert that the *Smith* Court "granted summary judgment establishing liability on materially identical facts". Motion, Doc. 22 at PageID 653. But the facts in *Smith* are not "materially identical". The *Smith* Court held that the plaintiffs failed to demonstrate that the defendant sellers, who were in the same position as the Singletons here, "knowingly" violated the RLPHRA and denied their summary judgment motion against the defendant sellers. *Smith*, 122 F.Supp. 2d 275. The Court specifically found that the plaintiff's evidence failed "to support a reasonable inference that [the defendant sellers] 'knowingly'

violated the [RLPHRA]." *Id*. And the "[p]laintiffs' failure to produce any evidence as to the defendant sellers' knowledge precludes summary judgment." *Id*.  That is the case here too as is explained below.

The Singletons cannot be liable for "knowingly" violating the RLPHRA where their conduct was merely negligent. "This knowledge standard, *a higher burden than mere negligence*, was intentionally chosen by Congress".  *Kimpson*, 92 F. Supp. 3d 53, at 71 (denying plaintiff's summary judgment motion for a violation of the RLPHRA) (emphasis added); *Benton*, 2024 U.S. Dist. LEXIS 163924 at *7; *Pellegrini* 2007 U.S. Dist. LEXIS 54838, at *22, 25-26; s*ee Randall v. Laconia, NH*, 679 F.3d 1, 8 (1st Cir. 2012) (Howard, J., concurring).

Plaintiffs erroneously argue the legal maxim that ignorance of the law is not an excuse is consistent with the proper construction of a "knowing" RLPHRA violation and that their interpretation is in accord with other federal liability statutes. Motion, Doc. 22 at PageID 662-663.  While that assertion may be true with respect to other federal liability statutes, it is clearly incorrect with respect to the RLPHRA.  Although ignorance of a law may not ordinarily relieve someone of the obligation to comply with its provisions, the holding of *Smith* and the other foregoing authorities are abundantly clear that a finding of "ignorance, mistake or accident", "inadvertence or inattentiveness", or "mere negligence" on the part of the Singletons precludes a finding that they "knowingly" violated the RLPHRA and liability.

In sum, Plaintiffs' argument is based upon a critically flawed analysis of *Smith* that dooms their Motion.

> **b. A "knowing" violation requires knowledge of the RLPHRA's disclosure requirements and analysis of the Singletons' knowledge, intent, motive, and state of mind is inappropriate for summary judgment**

In determining whether an RLPHRA violation occurred "knowingly", federal courts analyze a defendant's knowledge of the RLPHRA's disclosure requirements.  For example, in its analysis of whether a "knowing" violation occurred, the *Smith* Court expressly analyzed whether the defendants were "aware of the [RLPHRA's] disclosure requirements" and whether they "knew the [RLPHRA]'s requirements" when they did not provide a lead paint report. *Smith*, 122 F.Supp. 2d 274.

Other courts similarly analyze and discuss a defendant's knowledge of their disclosure obligations under the RLPHRA in considering whether a "knowing" violation occurred. *Kearney v. Elias*, No. 07-cv-149-JL, , at *12 (D.N.H. Aug. 11, 2008) (observing defendants' failure to provide a lead paint report "in their possession", "despite the defendants' knowledge of their obligation to do so."); *Patz v. Sureway Supermarket*, 2018 U.S. Dist. LEXIS 145211, at *9 (E.D. La. Aug. 27, 2018) (granting summary judgment to defendant where the uncontested facts showed the defendants had no knowledge "of the [RLPHRA]'s requirements"); *Morris v. Flaig*, 511 F.Supp.2d 282, 300-302 (E.D.N.Y. Mar. 21, 2007) (analyzing when a defendant acquired knowledge of his disclosure obligations and citing magistrate's report and recommendation that knowledge requires "a finding that the defendants were aware of the duty imposed on them by the regulations"); *Erwin v. Roe*, 928 N.E.2d 609, 618-619 (Ind.App. 2010) (analyzing whether a defendant had "knowledge of the RLPHRA or any of its requirements" and "knowledge of her duty to disclose under the RLPHRA").

Here, Plaintiffs provide no evidence of the Singletons' knowledge or awareness of the disclosure obligations under the RLPHRA that they assert were violated.  They further fail to point to any evidence of the Singletons' intent, motive, or state of mind.  Indeed, their Motion is premised on the incorrect argument that they only have to establish "whether Defendants knew

11

the facts that made their conduct a violation". Motion, Doc. 22 at PageID 663. The record is also devoid of evidence that the Singletons received or reviewed the documents at issue—merely that the City of Cincinnati Health Department "issued" the documents. SUF ¶¶ 4, 11, Doc. 22-1 at PageID 668, 670.

Accordingly, Plaintiffs' fail to establish the absence of a genuine dispute that the Singletons "knowingly" violated the RLPHRA and the Motion should be denied.

Moreover, the Court must be wary of resolving issues of a defendant's intent or state of mind on summary judgment. *Smith*, 122 F.Supp. 2d 274. A defendant's "motivation, in the court's opinion, should be a question for the factfinder" and "[d]eterminations of motive and intent . . . are questions better suited for the jury". *Pellegrini* 2007 U.S. Dist. LEXIS 54838, at *22, citing *McDonough v. City of Quincy,* 452 F.3d 8, 19 (1st Cir. 2006). In fact, the *Pellegrini* Court ultimately denied the plaintiff's motion for partial summary judgment finding that genuine issues of material fact exist as to whether there was a "knowing" violation, as the Court should do here. *Id*. at *25-26.

Analysis of the Singletons' knowledge, intent, motive, and state of mind, which is required here, is therefore inappropriate for summary judgment.

### c. Plaintiffs present no evidence that the Singletons "knowingly" violated the RLPHRA and the undisputed evidence points to the opposite

There is no evidence before the Court that even remotely would suggest that the Singletons "knowingly" violated the RLPHRA. In fact, the undisputed evidence points to the opposite—that any alleged violation was merely committed "through ignorance, mistake or accident", "inadvertence or inattentiveness", and/or negligence.

The Singletons aver that it was their understanding and belief that they were only required to provide any lead paint records or reports in their possession. B. Singleton Aff. at ¶5,

12

Doc. 23-1 at PageID 677-678; C. Singleton Aff. at ¶5, Doc. 23-2 at PageID 680-681. They did not have the documents at issue in their possession at the time they completed the lead disclosure form as part of the sale. B. Singleton Aff. at ¶6, Doc. 23-1 at PageID 678; C. Singleton Aff. at ¶6, Doc. 23-2 at PageID 681.  Further, the Singletons aver that they checked the box on the lead disclosure form stating "[s]eller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing" based upon the fact that they did not have the documents at issue in their possession and based upon their belief that they were only required to provide records and reports in their possession at that time. B. Singleton Aff. at ¶7, Doc. 23-1 at PageID 678; C. Singleton Aff. at ¶7, Doc. 23-2 at PageID 681.

To the extent any failure to provide the unpossessed documents at issue is even a technical violation of the RLPHRA, it was the product of "ignorance, mistake or accident", "inadvertence or inattentiveness", and/or mere negligence—the Singletons' belief that they were only required to provide documents in their possession based upon their review of the "Lead Warning Statement" on the disclosure form.

Notably, the Singletons expressly disclosed to Plaintiffs that lead-based paint hazards were present in the same disclosure form.  This undisputed fact supports an inference that any technical violation was the product of "ignorance, mistake or accident", "inadvertence or inattentiveness", and/or mere negligence, which must be drawn in the Singletons' favor as the non-movant.

Viewing the evidence in the light most favorable to the non-movant Singletons and drawing all reasonable inferences in their favor, Plaintiffs' Motion fails to demonstrate the absence of a genuine dispute that the Singletons "knowingly" violated the RLPHRA.

13

At best, Plaintiffs merely establish that the alleged failure to provide any documents "constitutes a *per se* violation of the [RLPHRA]", but "while that may be, Congress has nevertheless established that an individual may only seek redress if the violation was knowing." *Benton,* 2024 U.S. Dist. LEXIS 163924 *at* *9, citing 42 U.S.C. § 4852d(b)(3).

**B. Plaintiffs provide no authority for liability under the undisputed facts and the records at issue would merely reveal what was already disclosed—the presence of lead hazards**

Plaintiffs' Motion is notably silent on binding or persuasive authority supporting their theory of liability under the present undisputed facts. They cite no case holding that a seller who expressly discloses the presence of lead-based paint and lead-based paint hazards, discloses participation in a lead abatement program, and discloses health department clearance nonetheless violates the RLPHRA by failing to produce the specific underlying records not in their possession at the time of entering the contract.

The absence of supporting case law under these facts is notable and belies Plaintiffs' claim. If Plaintiffs' theory were correct—if a seller who disclosed the lead paint hazards themselves could be held liable for not providing underlying documents that they did not possess—one would expect at least a decision so holding. Plaintiffs point to none.

To the contrary, decisions interpreting the RLPHRA focus on whether the required disclosures were made, not on whether collateral documents were produced when the substantive information was already disclosed. Indeed, the RLPHRA "is a disclosure statute", not a document-production statute. *Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affs.*, 426 F.3d 241, 245 (3d Cir. 2005).

The statute's text and structure make clear that the disclosure obligation is knowledge-based and availability-based, not a strict-liability regime. The text of a statute is the best

evidence of congressional intent and, here, the RLPHRA merely requires a seller to provide a report "available to" them. 42 USC § 4852d (a)(1)(B); *see Sabra v. Iskander*, No. 1:08-CV-1204-TWT, 2008 WL 4889681 at *11 (N.D.G.A., November 10, 2008).  Moreover, the statutorily mandated language in the "Lead Warning Statement", reviewed by the Singletons in completing their lead disclosure form, states that a seller "is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections *in the seller's possession*[.]" 42 USC § 4852d (a)(3) (emphasis added).

Since the statutory language is clear and unambiguous, the Plaintiffs bear an "exceptionally heavy" burden of demonstrating that Congress intended something different from what it said. *Sabra*, 2008 WL 4889681 at *10, citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 9, 120 S. Ct. 1942, (2000). And Plaintiffs' failure to provide any evidence as to whether the documents at issue were in the Singletons' "possession" and "available" to them is fatal here.

Quite simply, Plaintiffs seek to exploit the RLPHRA as a liability trap against the Singletons.  But its purpose is not to create a trap for sellers who expressly disclose the presence of lead-based paint hazards, like the Singletons did, but do not produce underlying records that are not in their possession at the time of entering the contract.

The RLPHRA's purpose is to ensure that purchasers have information and notice about lead-based paint hazards and an opportunity to "see for themselves" whether they want to occupy premises that have known lead-based paint hazards before binding themselves to a purchase. *See Mason v. Morrisette*, 403 F.3d 28, 32 (1st Cir. 2005) (holding that the purpose of the RLPHRA's disclosure provision in 42 U.S.C. § 4852d(a)(1) is "to provide the purchaser . . . *with notice* that there could be a lead-based paint hazard present in the subject premises, and *the opportunity* to

either decline to enter into a contract regarding the premises or proceed forward with the transaction in the face of the knowledge that a lead-based paint hazard could be present.") (emphasis added).

The Plaintiffs indisputably had this notice, information, and the opportunity to conduct a lead-related inspection of the disclosed hazards, but they elected to proceed forward in the face of such knowledge.

As this Court already ruled in its Opinion and Order on the Singletons' Partial Motion to Dismiss, the Singletons disclosed the presence of lead-based paint hazards at the property, yet Plaintiffs elected to waive their opportunity to conduct a lead-related inspection to appraise the disclosed hazards. Order Mtn. Dismiss, Doc. 16 at PageID 438.  Even if Plaintiffs had been provided the documents forming the basis of their claimed violation, those would have merely revealed what the Singletons had already disclosed and what Plaintiffs already knew—that the property contained lead-based paint hazards.

Where a seller discloses the presence of lead-based paint hazards, discloses abatement and health department clearance, and the purchaser acknowledges those hazards and waives a lead-based paint inspection, as has occurred here, the RLPHRA's purpose is served.  Plaintiffs' attempt to manufacture liability from the non-production of documents whose substance was disclosed has no support in the statute or the case law.

## C. Plaintiffs have not proved they have incurred any actual damages

As a final point, Plaintiffs incorrectly assert that "the Court can and should simply rule that Defendants are liable for treble damages, while reserving a determination of the particular dollar amount of damages for trial." Motion, Doc. 22 at PageID 665.  But Plaintiffs put the cart

16

far before the horse. They have provided no evidence that they have any "damages incurred" as is required for any recovery. 42 USC § 4852d (b)(3).

Under the RLPHRA, the Plaintiffs must prove "*actual* damages, not hypothetical, speculative, or even nominal damages." *Kaye v. Acme Invs., Inc.*, No. 08-12570, 2008 WL 5188712, at *3-4 (E.D. Mich. Dec. 8, 2008) (emphasis original); *Christian v. Warwick Realty, LLC*, 2014 WL 2434626, at *4 (D.R.I. May 29, 2014) (noting that the RLPHRA requires that a claimant demonstrate "actual damage" stemming from "lead exposure or the failure to disclose or . . . the failure to warn about the risks of lead poisoning"); *McCready v. Main Street Trust, Inc.*, No. 07-CV-2096, 2008 WL 3200651, at *9 (C.D. Ill. 2008).

The Plaintiffs "also [have] the burden of proving, beyond speculation, that the [Singletons'] misconduct is the proximate cause of any claimed injuries." *Kaye*, 2008 WL 5188712, at *10; *N'Jai v. Bentz*, No. 13-1212, 2016 WL 7404550, at *7 (W.D. Pa. Dec. 22, 2016); *see also Kearney*, 2008 WL 3502116, at *6 ("A causal relationship with the defendant's conduct" is required to obtain damages under the RLPHRA).

Plaintiffs have not and cannot satisfy their burden given the undisputed fact and the Court must reject their improper assertion.

## V.      CONCLUSION

For the foregoing reasons, Defendants Barrett Singleton and Claire Singleton respectfully request that Plaintiffs' Motion be denied.

17

Respectfully submitted,

*/s/ Christopher R. Jones*
Christopher R. Jones (0092351)
Jeffrey M. Nye (0082247)
SSP LAW CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2708
(513) 533-2999 (fax)
crj@sspfirm.com
jmn@sspfirm.com
**Counsel for Defendants**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served on all counsel of record via CM/ECF on August 6, 2026.

/s/ Christopher R. Jones
Christopher R. Jones (0092351)

 Positive

As of: August 6, 2026 5:51 PM Z

# *Benton v. Berkshire Richmond LLC*

United States District Court for the Eastern District of Virginia, Richmond Division

September 11, 2024, Decided; September 11, 2024, Filed

Civil Action No. 3:23CV704 (RCY)

**Reporter**
2024 U.S. Dist. LEXIS 163924 *; 2024 LX 140633; 2024 WL 4149735

EVELYN R. BENTON, Plaintiff, v. BERKSHIRE RICHMOND LLC, Defendant.

**Subsequent History:** Reconsideration denied by, Dismissed by, Without prejudice *Benton v. Berkshire Richmond LLC, 2024 U.S. Dist. LEXIS 201645, 2024 WL 4682298 (E.D. Va., Nov. 5, 2024)*

Motion granted by *Benton v. Berkshire Richmond LLC, 2025 U.S. Dist. LEXIS 133664 (Feb. 28, 2025)*

Affirmed by *Benton v. Berkshire Richmond LLC, 2025 U.S. App. LEXIS 20857 (Aug. 15, 2025)*

## Core Terms

lead-based, paint, hazard, lessee, disclosure, defense motion, notice, summary judgment motion, motion to dismiss, lease

**Counsel:** [*1] Evelyn R. Benton, Plaintiff, Pro se, Henrico, VA.

For Berkshire Richmond LLC, Defendant: Jason R Waters, LEAD ATTORNEY, Wilson Elser, McLean, VA; Thomas Joseph Tutone, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, McLean, VA.

**Judges:** Roderick C. Young, United States District Judge.

**Opinion by:** Roderick C. Young

## Opinion

### MEMORANDUM OPINION

Plaintiff Evelyn R. Benton ("Plaintiff") brings this case against Defendant Berkshire Richmond LLC ("Defendant"), alleging that Defendant violated *Section 1018 of Title X, 42 U.S.C. § 4852d*, known as the Residential Lead-Based Paint Hazard Reduction Act ("RLPHRA"). The case is presently before the Court on Defendant's Motion to Dismiss, ECF No. 3. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Court will grant Defendant's Motion to Dismiss.

### I. FACTUAL ALLEGATIONS

Defendant "operates a multifamily unit on 300 W Franklin Street in Richmond[,] Virginia." Compl. 4, ECF No. 1. Plaintiff rented an apartment at that address from August 12, 2022, to August 31, 2023. *Id.*

Plaintiff "discovered after moving into the apartment that she had not . . . received[] The Lead Based [*2] Disclosure pamphlet after having health issues and discovering that the building had been built before 1978." *Id.* "As a result of [Defendant's] negligence, [Plaintiff] has been exposed to potential lead-based paint hazards without proper knowledge or precautions, which have resulted in her having adverse health effects." *Id.*

### II. PROCEDURAL HISTORY

Plaintiff initiated this action on October 25, 2023. Compl., ECF No. 1. On November 27, 2023, Defendant filed the instant Motion to Dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, ECF No. 3, and an accompanying Memorandum in Support, ECF No. 4. Plaintiff filed a Motion for Summary Judgment on December 14, 2023, ECF No. 8, and a "Memorandum in Opposition to the Motion to Dismiss Based on Fraud" on December 18, 2023. ECF No. 9. Defendant filed a Reply two days later. ECF No. 10. Defendant's Memorandum

in Support and Reply both included a proper *Roseboro* Notice pursuant to Rule 7(K) of the Local Civil Rules of the United States District Court for the Eastern District of Virginia. On December 20, 2023, Defendant filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 11, and on January 2, 2024, Plaintiff filed a Reply, ECF No. 13.

## III. STANDARD OF REVIEW

"A motion to dismiss under **[\*3]** *Rule 12(b)(6)* tests the sufficiency of a complaint." *Megaro v. McCollum, 66 F.4th 151, 157 (4th Cir. 2023)* (quoting *Republican Party of N. Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)*). A *Rule 12(b)(6)* motion "is not a procedure for resolving . . . contest[s] between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles A. Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice & Procedure* § 1356 (4th ed. 2024). *Federal Rule of Civil Procedure 8* only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal *Rule 8(a)(2)*. *Id.* (citations omitted). The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)* (citing *Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)*). All reasonable inferences that can be drawn from the complaint are drawn in the plaintiff's favor. *Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020).*

However, to survive a *Rule 12(b)(6)* motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state **[\*4]** a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Twombly, 550 U.S. at 570*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly, 550 U.S. at 556*). "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.* Nonetheless, "on a *Rule 12(b)(6)* motion, the burden lies with the movant to show entitlement to dismissal." *Ziegler v. Dunn, 2024 U.S. Dist. LEXIS 31659, 2024 WL 761860, at \*2 (E.D. Va. Feb. 23, 2024)* (citing Wright, Miller, & Spencer, *supra*, § 1357).

Also, a *pro se* complaint is "to be liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)* (internal quotation marks omitted). "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020).* So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc., 2023 U.S. Dist. LEXIS 162826, 2023 WL 5959422, at \*2 (E.D. Va. Sept. 13, 2023).*

## IV. DISCUSSION

Plaintiff asserts just one claim in the Complaint: that Defendant violated the RLPHRA, **[\*5]** specifically, "*Section 1018 of Title X*." Compl. at 4-5; *see 42 U.S.C. § 4852d* (codification of RLPHRA disclosure requirement). She seeks "damages as specified for 3 times the amount of her actual damages which amount to approximately $155,000" and "injunctive relief, requiring [Defendant] to comply with the lead-based disclosure requirements in the future." *Id.* at 5. The only issue properly before the Court is whether Plaintiff's Complaint sets forth sufficient facts to plausibly allege that Defendant violated the RLPHRA.

### A. RLPHRA Background & Pleading Standard

The RLPHRA directs the Secretary of the Department of Housing and Urban Development ("HUD") and the Administrator of the Environmental Protection Agency ("EPA") to promulgate regulations mandating the disclosure of lead-based paint hazards in privately owned housing that is sold or leased. *See 42 U.S.C. § 4852d.* The statute states that HUD and the EPA "shall promulgate regulations . . . for the disclosure of lead-based paint hazards in target housing which is offered for sale or lease." *Id. § 4852d(a)(1).* It specifies:

The regulations shall require that, before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall--

> (A) provide the purchaser **[*6]** or lessee with a lead hazard information pamphlet . . . ;
>
> (B) disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards . . . ; and
>
> (C) permit the purchaser a 10-day period . . . to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

*Id.* This applies only to "target housing," *id.*, which means housing constructed "prior to 1978," *24 C.F.R. § 35.86* (HUD); *40 C.F.R. § 745.103* (EPA); *see 42 U.S.C. § 4852d(a)(3)*.

The regulations promulgated by the agencies require that the lessor: (1) provide the lessee with "an EPA-approved lead hazard information pamphlet"; (2) disclose to lessees the presence of, and any information about, "known lead-based paint and/or lead-based paint hazards" in the building; (3) disclose to each agent the same information regarding any "known lead-based paint and/or lead-based paint hazards" that must be disclosed to lessees; and (4) provide to lessees records about "lead-based paint and/or lead-based paint hazards" in the apartment and common areas, and other apartments if they are part of a lead-based paint reduction in the building itself. *24 C.F.R. § 35.88(a)* (HUD); *40 C.F.R. § 745.107(a)* (EPA). These regulations do not impose a duty on a landlord to inspect or to remediate. **[*7]** *24 C.F.R. § 35.88(a)* (HUD); *40 C.F.R. § 745.107* (EPA).

For a private right of action to lie for a violation of the RLPHRA, "the appropriate scienter standard to impose liability under the statute" is knowledge—the defendant must have "knowingly" violated the RLPHRA's requirements. *Smith v. Coldwell Banker Real Est. Servs., 122 F. Supp. 2d 267, 273-74 (D. Conn. 2000)*; *see 42 U.S.C. § 4852d(b)(3)* ("Any person who knowingly violates any provision of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual."). "'Knowingly' is to be construed as meaning that the 'defendant was aware of his or her conduct and th[e] defendant did not perform it merely through ignorance, mistake or accident.'" *G.M.M. v. Kimpson, 92 F. Supp. 3d 53, 71 (E.D.N.Y. 2015)* (quoting *Smith, 122 F. Supp. 2d at 273*); *see also Page v. Corvias Grp., LLC, 2021 U.S. Dist. LEXIS 172968, 2021 WL 4163562, at *11 (E.D. N.C. Sep. 13, 2021)* (denying defendant's motion to dismiss based on plaintiffs' allegation that "defendants *knew about* [the lead-based paint] before the plaintiffs signed the [Residential Occupancy Agreements]" (emphasis added)). "This knowledge standard" is "a higher burden then mere negligence," and it "was intentionally chosen by Congress." *Kimpson, 92 F. Supp. 3d at 71* (citing, *inter alia, Randall v. Laconia, 679 F.3d 1, 8 (1st Cir. 2012)* (Howard, J., concurring)); *see also Renick v. Sperau, 2013 U.S. Dist. LEXIS 45803, 2013 WL 1314417, at *7 (E.D. Md. Mar. 29, 2013)* (declining to enter summary judgment because even though the defendant "potentially inadvertent[ly] sign[ed]" the "certification of accuracy," a **[*8]** genuine issue of material fact remained as to whether the defendant "had knowledge of the existence of lead paint in the house").

The Fourth Circuit has not specifically addressed the elements of establishing a claim under the RLPHRA and specifically *§ 4852d*. Turning to persuasive authority, then—particularly the opinions of other federal district courts that have considered similar claims—the Court adopts the following standard: to establish a claim under *§ 4852d*, a plaintiff must show that (1) the plaintiff was a lessee; (2) the defendant was a lessor who knowingly failed to make the proper disclosures; (3) the leased property was "target housing"; and (4) the lease contract was signed after the regulations were effective. *See, e.g., Kimpson, 92 F. Supp. 3d at 71*; *Kaye v. Acme Invs., Inc., 2008 U.S. Dist. LEXIS 107356, 2008 WL 5188712, at *3 (E.D. Mich. Dec. 8, 2008)*; *Sipes ex rel. Slaughter v. Russell, 89 F. Supp. 2d 1199, 1202 (D. Kan. 2000)*; *see also Page, 2021 U.S. Dist. LEXIS 172968, 2021 WL 4163562, at *11*; *Renick, 2013 U.S. Dist. LEXIS 45803, 2013 WL 1314417, at *7*.

**B. Plaintiff Has Failed to Plead Sufficient Facts to State a Claim Under the RLPHRA**

Defendant argues that Plaintiff's Complaint is substantively insufficient because she fails to allege facts that support the inference that Defendant "knowingly" violated the RLPHRA. *See* Def.'s Mem. Supp. 3-4, ECF No. 4. Even liberally construing Plaintiff's Complaint, the Court agrees. As Defendant notes, Plaintiff alleges only that Defendant acted *negligently*, not **[*9]** *knowingly*. Compl. 4, ECF No. 1 ("As a result of the defendant's *negligence*, the [P]laintiff has been exposed to potential lead-based paint hazards

. . . ." (emphasis added)). Plaintiff appears to rest her case on the belief that the Defendant's alleged failure to provide the require notices constitutes a *per se* violation of the statute. *See id.* ("The defendant's failure to provide lead-based disclosures to the [P]laintiff during the tenancy period constitutes a violation."). And while that may be, Congress has nevertheless established that an individual may only seek redress if the violation was *knowing. 42 U.S.C. § 4852d(b)(3)*. Because the facts alleged, at most, give rise to an inference of a negligent violation of the RLPHRA, Plaintiff has failed to plead a viable claim against Defendant.

Plaintiff attempts to cure this deficiency in her opposition brief and a contemporaneously filed Motion for Summary Judgment, ECF No. 8. *See* Pl.'s Mot. for Summ. J. 7 ("The [P]laintiff respectfully believes that her Motion for summary judgment should be granted and the [Defendant's] Motion to Dismiss denied based on the following arguments: . . . . "). However, "a plaintiff may not amend her complaint via briefing." *Hurst v. District of Columbia, 681 F. App'x 186, 194 (4th Cir. 2017)* **[*10]** (citing *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)*); *see also Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)* ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). And while a court may, after proper notice to the parties, convert a 12(b)(6) motion to a motion for summary judgment in order to consider matters outside the pleadings, *see Fed. R. Civ. P. 12(d)*, the Court declines to do so here.

Cabined, therefore, to the matters contained within the pleadings, the Court finds that Plaintiff has failed to state a claim for a knowing violation of the RLPHRA, and therefore the Complaint must be dismissed. And because the Complaint will be dismissed for this bedrock deficiency, the Court does not reach the issues in Plaintiff's Motion for Summary Judgment.[1]

---

[1] The Court notes that Plaintiff's Motion for Summary Judgment appears—or rather, attempts—to convert Plaintiff's claim to one for breach of contract. Pl.'s Mot. for Summ. J. 3 ("This case arises out of a breach of contract claim brought by the Plaintiff . . . . The crux of this dispute revolves around the Defendant's failure to provide the required Lead-Based Paint Disclosure as mandated by federal law . . . ."). Over and above a plaintiff's inability to amend their complaint to add or amend a claim by way of briefing, *see Hurst, 681 F. App'x at 194*, the Court observes that it would likely not have jurisdiction over a breach of contract claim between Plaintiff and Defendant, as the parties do not appear to be of diverse citizenship, *see*

## V. **CONCLUSION**

For the reasons set forth above, the Court will grant Defendant's Motion to Dismiss.

An appropriate Order shall issue.

/s/ Roderick C. Young

Roderick C. Young

United States District Judge

Date: September 11, 2024

Richmond, Virginia

## **ORDER**

This matter is before the Court on the Defendant's Motion to Dismiss (ECF No. 3). For the reasons stated in the accompanying Memorandum Opinion, the Motion to Dismiss (ECF No. 3) is GRANTED.

Plaintiff does not request and the Court does not grant leave to amend, rendering this Order final and appealable. *See Britt v. DeJoy, 45 F.4th 790, 796 (4th Cir. 2022)* (holding that an order dismissing a case without leave to amend is final and appealable). Should Plaintiff desire to appeal, a written notice of appeal must be filed with the Clerk of the Court within thirty (30) days of **[*11]** the date of entry hereof. Failure to file a notice of appeal within that period may result in the loss of the ability to appeal.

Let the Clerk file this Order and the accompanying Memorandum Opinion electronically, notify all counsel accordingly, and mail copies to the Plaintiff, who is proceeding *pro se*.

This case is now CLOSED.

It is so ORDERED.

/s/ Roderick C. Young

Roderick C. Young

---

Compl. at 4 (suggesting that Defendant is incorporated in Virginia). Thus, even if the Court were to accept Plaintiff's constructive amendment via the Motion for Summary Judgment, it would then be obligated to dismiss the action for lack of subject matter jurisdiction.

2024 U.S. Dist. LEXIS 163924, *11

United States District Judge

Date: <u>September 11, 2024</u>

Richmond, Virginia

---

**End of Document**

 Positive

As of: August 6, 2026 5:52 PM Z

# *Pellegrini v. Century 21*

United States District Court for the District of Massachusetts

June 29, 2007, Decided

Civil Action No. 05-30077-MAP

**Reporter**

2007 U.S. Dist. LEXIS 54838 *

MAARTIN PELLEGRINI, Plaintiff v. CENTURY 21, HAROLD DUPEE REALTORS, Defendant

**Subsequent History:** Adopted by, Summary judgment denied by *Pellegrini v. Century 21, 2007 U.S. Dist. LEXIS 54836 (D. Mass., July 20, 2007)*

## Core Terms

paint, certificate, buyer, lead-based, hazard, seller, summary judgment, notification, recommend, disclosure, inspect, warn, risk assessment, lead poisoning, checkmark, genuine issue of material fact, emotional distress damages, residential, package, facsimile, lessee, notify

**Counsel:** **[\*1]** Maarten N. Pellegrini, Plaintiff, Pro se, North Adams, MA.

Nicola M. Pellegrini, Plaintiff, Pro se, North Adams, MA.

For Century 21, Harold Dupee Realtors, Defendant: Richard F. Faille, Law Offices of Faille, Birrell & Daniels, Springfield, MA.

**Judges:** KENNETH P. NEIMAN, Chief Magistrate Judge.

**Opinion by:** KENNETH P. NEIMAN

## Opinion

REPORT AND RECOMMENDATION WITH REGARD TO CROSS MOTIONS FOR SUMMARY JUDGMENT (Document Nos. 33 and 34)

June 29, 2007

NEIMAN, C.M.J.

In this case, Maartin Pellegrini ("Plaintiff"), proceeding *pro se,* alleges that Century 21, Harold Dupree Realtors ("Defendant"), in violation of *42 U.S.C. § 4852d*, "knowingly failed to disclose information, concerning the real and potential hazards of lead paint, prior to [Plaintiff's] signing a purchase and sale agreement." (Amended Complaint (hereinafter "Complaint") at 1.) Discovery is complete and the parties have filed cross motions for summary judgment which have been referred to this court for a report and recommendation. *See 28 U.S.C. § 636(b)(1)(B)*. For the reasons which follow, the court will recommend that both motions be denied.

I. STANDARD OF REVIEW

When ruling on a motion for summary judgment the court must construe the facts in a light most favorable **[\*2]** to the nonmoving party. *Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)*. Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Government Dev. Bank, 27 F.3d 746, 748 (1st Cir. 1994)*. The nonmoving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc., 18 F.3d 13, 15 (1st Cir. 1994)* (discussing *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986))*. The mere fact that both parties move for summary judgment does not change the foregoing analysis. *United Paperworkers Int'l Union, Local 14 v. Int'l Paper Co., 64 F.3d 28, 32 n.2 (1st Cir. 1995)*.

II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

As indicated at oral argument, the court finds it easiest to first consider Defendant's motion for summary [*3] judgment, even though it was filed second. In the end, the court believes that genuine issues of material fact exist with respect to Defendant's motion and, as a result, will recommend that it be denied.

A. Background

The following facts are taken mainly from Defendant's Concise Statement (Document No. 36, hereinafter "Def.'s Facts") and the exhibits attached thereto as well as from exhibits attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Document No. 38, hereinafter "Pl.'s Opp'n"). [1] Where a dispute exists, the court has construed the facts in a light most favorable to Plaintiff, the non-moving party, *see Uncle Henry's, Inc. v. Plaut Consulting Co., 399 F.3d 33, 41 (1st Cir. 2005)*, but has omitted any "conclusory allegations, improbable inferences, and unsupported speculation," *Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 26 (1st Cir. 2006)*.

In late 2003, Plaintiff and his brother -- former-plaintiff Nicola Pellegrini (hereinafter "Nicola") -- were seeking to purchase a house to remodel in North Adams, Massachusetts. (Def.'s Facts PP 1, 2.) On a particular day, the specific date being unclear from the record, Plaintiff met with two of Defendant's representatives, Dick Shoestock and Mary Jane Delmaso, in order to view a house located at 56 Liberty Street. (*Id.* P 3.) At the time, Delmaso pointed out some chipped paint and told Plaintiff it was "probably lead paint." (*Id.* P 4.) Plaintiff responded that he was not concerned about lead paint because no children under six would be living at the property. (*Id.* P 5.)

Plaintiff later testified at his deposition that he and Nicola eventually read and signed a one-page Property Transfer Notification Certification. (*Id.* PP 6, 7.) That document (hereinafter "the certification page") contained the following paragraph:

---

[1] Mindful of Plaintiff's *pro se* status, the court has also considered the statement of material facts Plaintiff filed in support of his own motion for summary judgment (Document No. 38 at 2-4, hereinafter "Pl.'s Facts") as well as the exhibits attached thereto (hereinafter "Pl.'s Exs."). *See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)* [*4] (*pro se* allegations entitled to liberal construction). The court also notes that its references to Defendant's exhibits come from a cleaned-up version Defendant submitted at oral argument.

**Required Federal Lead Warning Statement:** Every purchaser of any interest in residential [*5] property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

(Pl's Ex. D.) The certification page also indicated, with a checkmark, that Plaintiff and Nicola had "waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards." (*Id.*) Further, and perhaps most importantly for purposes here, the certification page indicated, again with a checkmark, that Plaintiff and [*6] Nicola had "received the Property Transfer Lead Paint Notification." (*Id.*)

It is undisputed that a document entitled the "Childhood Lead Poisoning Prevention Program (CLIPP) Property Transfer Lead Paint Notification" (hereinafter the "PTLPN") is an eleven-page "package" required by federal law and published by the Massachusetts Department of Public Health. (See Pl.'s Ex. F.) Page 11 of the PTLPN is the "certification page" noted above. (*Id.*) Page 1 of the PTLPN describes the certification page as "a check list to certify that the prospective purchaser has been fully notified by the real estate agent"; it also notes that "[t]his certification should be filled out and signed by the prospective purchaser before the signing of a purchase and sale agreement." (*Id.*) In any event, the very first paragraph of the PTLPN states that the entire package "must be given in full to meet state and federal requirements." (*Id.*) Pages 1 through 10 then go on to provide extremely detailed information about lead paint for prospective purchasers of Massachusetts homes built before 1978; for example, buyers are given information about symptoms and treatment for lead poisoning, deleading, home inspections, [*7] penalties, rental property concerns, and insurance. (*Id.*)

2007 U.S. Dist. LEXIS 54838, *7

As indicated, there is no dispute that Plaintiff and Nicola were provided the certification page. The crux of this case concerns whether they were ever provided the *other* ten pages of the PTLPN. Plaintiff's Exhibit E is key in this regard. It consists of two facsimiles from Defendant to Plaintiff in late 2003.

The first facsimile (albeit the second one attached in Plaintiff's Exhibit E) is dated November 29, 2003, and is eight pages long. Pages 1 through 4 of that facsimile are a blank Purchase and Sale ("P&S") agreement and pages 6 through 8 are a disclosure form. (Pl.'s Ex. E.) The disclosure form was signed by the seller, James Horrigan ("Horrigan"), twelve months earlier, *i.e.,* on November 24, 2002, apparently at the time he listed the property for sale with Defendant. Page 5, the certification page, was signed on December 2, 2002, by Horrigan and the listing agent, Frances Buckley ("Buckley"), another one of Defendant's representatives. (*Id.*) The certification page indicates, with checkmarks, that the seller "has no knowledge of lead-based paint and/or lead-based paint hazards in the housing" and that the agent "has informed **[*8]** the seller of the seller's obligations under federal and state law for lead-based paint disclosure and notification, and is aware of his/her responsibility to ensure compliance." (*Id.*) The number "11" at the bottom of the certification page is partially obscured. (See *id.*)

The second facsimile was sent to Plaintiff by Shoestock on December 1, 2003, and is seven pages long. (*Id.*) The first page thereof is a cover sheet on which Shoestock wrote the following: "Please call me for instructions on where to initial and sign! You must sign and initial where appropriate. If both buying, both must initial and sign. I believe the offer is too low. Price should be at $ 74,000. Thanks, Dick." (*Id.*) Pages 2 through 5 are a partially-completed P&S agreement with what appears to be an offer by Plaintiff and Nicola for $ 65,000. (*Id.*) Page 6 is another copy of the certification page, again with Horrigan and Buckley's signatures and checkmarks as well as a completely obscured number "11." (*Id.*) And page 7 is a blank mandatory agency disclosure statement. (*Id.*)

As is obvious, neither the November 29th nor the December 1st facsimile included pages 1 through 10 of the PTLPN. (See *id.*) However, they both **[*9]** included the certification page and its one-paragraph "Required Federal Lead Warning Statement." (*Id.*) They also both included the P&S agreement -- one a blank, the other a draft -- which included its own paragraph acknowledging that the buyers had been provided "the standard

notification form from the Massachusetts Department of Public Health concerning lead paint." (*Id.*) That paragraph reads as follows:

> **19. LEAD PAINT LAW:** BUYER acknowledges that under Massachusetts Law, on homes constructed prior to 1978, and whenever a child under six (6) years of age resides in any premises in which paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said material so as to make it inaccessible to children under six (6) years of age. *The BUYER further acknowledges that, prior to signing of this Agreement, the SELLER and Broker(s) have (a) provided to the BUYER the standard notification form from the Massachusetts Department of Public Health concerning lead paint, the certificate for which BUYER has signed, which is attached hereto;* (b) informed the BUYER of the availability of inspections for dangerous levels of lead; and **[*10]** (c) verbally informed the BUYER of the possible presence of dangerous levels of lead and the provisions of the lead paint law and regulations found in 105 CMR 460.100D. Notwithstanding, SELLER is under no obligation to the BUYER to remove lead paint, which may be present in the Premises.

(*Id.* (emphasis added).) Plaintiff and Nicola signed the P&S agreement (which ultimately reflected a sales price of $ 77,000) on December 4, 2003. (Def.'s Facts, Ex. 3 to Pl.'s Depo.)

That same day, December 4, 2003, Nicola signed the certification page. (Pl.'s Ex. D.) Plaintiff had signed the certification page on December 1, 2003, and Shoestock signed the certification page on December 5, 2003. (*Id.*) As noted, the signed copy of the certification page indicates, with a checkmark, that the buyers had "received the Property Transfer Lead Paint Notification." (*Id.*) As described more fully in the discussion below, however, Plaintiff vehemently disputes that he was ever provided pages 1 through 10 of the PTLPN.

There is no dispute, however, that Plaintiff thereafter hired Neil Segala of North Adams to inspect the property. (Def.'s Facts P 9.) In his inspection report dated December 15, 2003, which Plaintiff **[*11]** concedes to have read, Segala informed Plaintiff that there was "likely" lead paint on the premises. (*Id.* P 10 and Ex. 4 to Pl.'s Depo).) Moreover, Plaintiff testified that, prior to closing, three individuals -- Shoestock, Delmaso and Segala -- all told him that there was a

"good chance" of lead paint at the property. (Def's Facts P 11.)

B. Discussion

After first describing the statute upon which Plaintiff bases his one-count complaint, *42 U.S.C. § 4852d*, the court will turn to Defendant's main argument that, as a matter of law, it fully provided all required lead-paint disclosures. The court will then turn to Defendant's alternative arguments which address the statute's knowledge standard and Plaintiff's claim for emotional distress damages. In the end, the court will recommend that Defendant's motion be denied.

1. The Statute

In pertinent part, the relevant lead-paint disclosure statute; *42 U.S.C. § 4852d*, provides as follows:

(a) Lead disclosure in purchase and sale or lease of target housing

   (1) Lead-based paint hazards

   Not later than 2 years after October 28, 1992, the Secretary and the Administrator of the Environmental Protection Agency shall promulgate regulations under this section **[*12]** for the disclosure of lead-based paint hazards in target housing which is offered for sale or lease. The regulations shall require that, before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall--

   (A) provide the purchaser or lessee with a lead hazard information pamphlet, as prescribed by the Administrator of the Environmental Protection Agency under section 406 of the Toxic Substances Control Act [*15 U.S.C.A. § 2686*];

   (B) disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser or lessee any lead hazard evaluation report available to the seller or lessor; and

   (C) permit the purchaser a 10-day period (unless the parties mutually agree upon a different period of time) to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

   (2) Contract for purchase and sale

Regulations promulgated under this section shall provide that every contract for the purchase and sale of any interest in target housing shall contain a Lead Warning Statement and a statement signed by the purchaser that the purchaser **[*13]** has--

(A) read the Lead Warning Statement and understands its contents;

(B) received a lead hazard information pamphlet; and

(C) had a 10-day opportunity (unless the parties mutually agreed upon a different period of time) before becoming obligated under the contract to purchase the housing to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

(3) Contents of Lead Warning Statement

The Lead Warning Statement shall contain the following text printed in large type on a separate sheet of paper attached to the contract:

"Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards **[*14]** from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.".

(4) Compliance assurance

Whenever a seller or lessor has entered into a contract with an agent for the purpose of selling or leasing a unit of target housing, the regulations promulgated under this section shall require the agent, on behalf of the seller or lessor, to ensure compliance with the requirements of this section.

*42 U.S.C. § 4852d(a)*.

As is evident from the statutory language, the seller's agent, via *subsection (a)(4)*, must ensure that the seller provides the buyer with a lead hazard information pamphlet (*subsection (a)(1)(A)*), discloses the presence of known lead-based paint or hazards (*subsection (a)(1)(B)*), permits the buyer ten days to conduct a lead risk assessment (*subsection (a)(1)(C)*), includes a lead warning statement and specifically-signed notification with the purchase and sale agreement (*subsection (a)(2)*), and ensures that the lead warning statement uses certain language (*subsection (a)(3)*). Here, the only issue appears to be Defendant's **[*15]** compliance with *subsection (a)(1)(A)*, the requirement that the agent ensure that the buyer be provided a lead hazard information "pamphlet," *i.e.,* pages 1 through 10 of the PTLPN. Thus, there appears to be no question that Defendant disclosed the presence of lead-based paint or hazards, permitted Plaintiff ten days to conduct a lead risk assessment, included with the P&S agreement a lead warning statement and the specifically-signed notification, *i.e.,* the certification page, and ensured that the certification page used the statutorily-defined language. Accordingly, the court will focus on *subsection (a)(1)(A)*.

2. Defendant's Subsection (a)(1)(A) Argument

Defendant argues that there can be no genuine issue that it complied with *subsection (a)(1)(A)*. For one thing, Defendant asserts, Shoestock testified that he gave pages 1 through 10 of the PTLPN to both Nicola, a co-buyer, and to Gerald Pellegrini ("Gerald"), Plaintiff and Nicola's father. (Def.'s Facts, Shoestock Depo. at 34, 66.) [2] In addition, Defendant continues, the P&S agreement indicates that Plaintiff and Nicola had been given "the standard notification form from the Massachusetts Department of Public Health concerning lead **[*16]** paint, the certificate for which BUYER has signed, which is attached hereto." (*Id.,* Ex. 3 to Pl.'s Depo.) Moreover, Defendant observes, the certification page was signed and checked to indicate that Plaintiff and Nicola had "received the Property Transfer Lead Paint Notification." (Pl.'s Ex. D.)

Plaintiff categorically disputes that either he, Nicola or Gerald were ever given pages 1 through 10 of the PTLPN. Plaintiff himself avers that Shoestock "absolutely did not give [him] the Property Transfer Lead Paint Notification package" either directly or through his father or brother. (Pl.'s Opp'n, Pl. Aff.) For his part, Nicola avers as follows with respect to the meeting he and Gerald had with Shoestock:

> . . . I recall a conversation about a "letter of recommendation" that Mr. Shoestock asked me and my father to give to him so that he could show to other potential customers that we recommended his services as a real estate agent. I also recall Mr. Shoestock showing me other real estate listings from the North Adams area on his computer. **[*17]** *I do not remember Mr. Shoestock giving me the "Property Transfer Lead Paint Notification". I believe that I would have remembered such an important event.* Since my brother had more of an investment in the property than myself; weather [sic] it was via phone, E-mail, or fax; he handled all the paperwork and always was the first to deal with Mr. Shoestock directly.

(*Id.,* Nicola Aff. (emphasis added).) Gerald similarly does not recall any such documents being provided. (*Id.,* Gerald Aff.)

Moreover, at his deposition, Plaintiff gave the following plausible explanation for the checkmarks he and/or Nocola placed on the certification page:

> A. . . . To my understanding, this sheet was not connected with any other package. I received this sheet by a fax which 11, the number 11, was not visible. So it looks like this was a single page and this was not page 11 to another package. From my understanding this reads as a complete document in and of itself.
>
> There is a warning statement here, which I thought I was signing, that I read that statement and there were checks indicating what the seller was disclosing to me and I thought there was my acknowledgment that I received this seller's disclosure.
>
> Q. **[*18]** Did you read this before you signed it, Exhibit 1?
>
> A. Yes.
>
> Q. Did you understand it?
>
> A. I understand it as a single-page entity.
>
> Q. It's your testimony that at no time did you ever see Exhibit 2 [(the PTLPN)] prior to signing the purchase and sale agreement, is that correct?

---

[2] Shoestock initially stated that he gave pages 1 through 10 to *Plaintiff* and Gerald, but later corrected himself by stating it was to *Nicola* and Gerald. (*Id.*)

A. Yes.

(Plaintiff's Depo. at 17-18, 21.) In other words, Plaintiff, not observing the obscured number "11" at the bottom of the certification page, thought that the reference to the "Property Transfer Lead Paint Notification" was actually a reference to the one-paragraph "Required Federal Lead Warning Statement" and not a reference to the expansive eleven-page PTLPN package, most of which he had not received.

In the court's view, Plaintiff's testimony, when coupled with his affidavit and the affidavits of Nicola and Gerald, raises a genuine issue of material fact as to whether pages 1 through 10 of the PTLPN were actually provided to Plaintiff in compliance with *subsection (a)(1)(A)* of the statute. This is not an insignificant issue, given the underlying purpose of *subsection (a)(1)(A)* that a potential buyer be fully informed of the risks and expenses related to lead-based paint. Accordingly, the court finds Defendant's **[*19]** main argument insufficiently persuasive to allow its motion for summary judgment.

### 3. Defendant's Alternative Arguments

Defendant next argues that Plaintiff cannot recover under the statute's knowledge-based penalty provision. Before addressing that issue, the court first briefly discusses, and rejects, yet another argument pursued by Defendant, that Plaintiff's claim for emotional distress damages ought independently be dismissed.

#### a. *Emotional Distress Damages*

Defendant argues that Plaintiff is entitled to no emotional distress damages because there is no evidence to support any physical or emotional harm. In response, Plaintiff notes that Defendant never deposed his "expert witness," Barbara Holian, a licensed mental health counselor, who will testify as to his emotional distress. As Defendant notes, only one innocuous note from Ms. Holian has been supplied. [3] Still, in the court's view, it is premature to rule that no emotional distress damages are recoverable. *Cf. Correa v. Hospital San Francisco, 69 F.3d 1184, 1197 (1st Cir. 1995)* (determining emotional distress damages "is a matter

---

[3] That note appears to be from a December 1, 2004, "family" therapy session **[*20]** with Holian's client, Plaintiff's mother, Isabel Pellegrini, and her two sons, Plaintiff and Nicola. At most, the note refers to "multiple stressors affecting relationships," including "home is a health . . . Risk needs to be de-leaded will Lose money [sic]."

largely within the jury's Ken").

#### b. *Knowledge Standard*

As Defendant points out, the statute's penalty provision requires a *knowing* violation: "Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." *42 U.S.C. § 4852d(b)(3)*. According to Defendant, there can be no such violation because: (1) its representative, Delmaso, early on pointed out some chipped paint and told Plaintiff it was "probably lead paint"; (2) Plaintiff and Nicola checkmarked and signed the certification page; (3) Plaintiff signed the P&S agreement which included its own disclosure; (4) Segala, Plaintiff's inspector, informed Plaintiff in his December 15, 2003, report that there was "likely" lead paint on the premises; (5) Plaintiff testified that, prior to closing, three individuals -- Shoestock, Delmasoaw Segala -- all told him that there **[*21]** was a "good chance" of lead paint on the property; and (6) Shoestock testified that he gave pages 1 through 10 of the PTLPN to Nicola and/or Gerald.

Although Defendant makes a strong argument as to knowledge, the court believes that a genuine issue of material fact exists as to whether Defendant "knowingly" violated *42 U.S.C. § 4852d(a)(1)(A)*. First, as Plaintiff observes, a *knowing* violation is easier to prove than a *willful* violation. *See Smith v. Coldwell Banker Real Estate Servs., 122 F. Supp. 2d 267, 273 (D. Conn. 2000)*. "'Knowingly' as commonly used and interpreted means that defendant was aware of his or her conduct and that defendant did not perform it merely through ignorance, mistake or accident." *Id.* (citing Black's Law Dictionary 872 (6th ed. 1990)). "Willfully," by contrast, denotes an act which is "[v]oluntary and intentional, but not necessarily malicious." Black's Law Dictionary (7th ed. 1999).

Second, viewing the facts in a light most favorable to Plaintiff, it appears that Shoestock -- his protestations to the contrary -- did *not* give a copy of pages 1 through 10 of the PTLPN to Nicola or Gerald when he met with them. True, this may have been an unfortunate oversight. *See* **[*22]** *Smith, 122 F. Supp. 2d at 273* (observing that, under *§ 4852d*, defendants "cannot be liable for their inadvertence or inattentiveness"). But Shoestock's motivation, in the court's opinion, should be a question for the factfinder. *See McDonough v. City of Quincy, 452 F.3d 8, 19 (1st Cir. 2006)* ("Determinations of motive and intent . . . are questions better suited for

the jury.") (citations omitted).

Third, it appears that Shoestock knowingly -- indeed, purposefully -- decided not to fax Plaintiff pages 1 through 10 of the PTLPN either on November 29, 2003, or on December 1, 2003. Shoestock explained at his deposition that there was "no sense in faxing the whole thing" because he had already given it to Plaintiff. (Pl.'s Ex. J. at 40-41.) [4] As described, the fact remains very

---

[4] In relevant part, Shoestock testified as follows:

Q. So when you went to fax that sheet in the folder [the certification], was it already loose or was it attached to something else and needed to be removed in order to be faxed, or which was it?

A. It was probably clipped with a paper clip onto the --

Q. Onto the what?

A. Onto the property transfer lead paint notification package that was in the folder **[*23]** of the property.

Q. So you removed that paper clip and separated that page. Is that correct?

A. That is correct.

Q. So you only faxed page 11?

A. That is correct.

Q. And the whole package was in there and available, also, with a paper clip?

A. Yes, sir.

Q. Why did you only send the one page?

A. That is the only page that had to be signed to go along with the purchase and sale agreement, the offer.

. . . .

Q. If we could look at Exhibit 1 [(the PTLPN)], second sentence, it says, the package must be given in full. Correct?

A. Yes, sir.

Q. And you easily could have done that with this faxed Exhibit 2 [(the certification)]. Is that correct?

A. But I already gave it to you. I had already given it to you earlier, and there's no sense in faxing the whole thing.

Q. So you have no evidence of that, do you? There's no acknowledgment. Is that correct?

much in issue.

Fourth, **[*24]** Defendant cannot escape the fact that page 1 of the PTLPN prominently stated that it had to be provided "in full," *i.e.*, together with the certification page. Although Shoestock acknowledged that fact, he testified nonetheless that he did *not* attach pages 1 through 10 of the PTLPN to the certification page. (*Id.* at 39-41.) Nor did he affix pages 1 through 10 to the P&S agreement, even though that document also appears to require such attachment. (As indicated, the P&S Agreement states that "the SELLER and Broker(s) have . . . provided to the BUYER the standard notification form from the Massachusetts Department of Public Health concerning lead paint, the certificate for which BUYER has signed, *which is attached hereto* (emphasis added).)

In short, the court believes that genuine issues of material fact exist as to whether Defendant knowingly violated the statute. Accordingly, the court is prepared to recommend that Defendant's motion for summary judgment be denied.

Before formalizing this recommendation, however, the court adds one final point. Plaintiff makes much of the fact that Shoestock -- the only representative of Defendant who claimed to have provided Plaintiff and/or Nicola or **[*25]** Gerald with pages 1 through 10 of the PTLPN -- held himself out as a *buyer's* agent. Since the statute places disclosure obligations on *seller's* agents, (*see* 42 U.S.C. § 4852d(a)(4)), Plaintiff argues, it is immaterial whether Shoestock ever disclosed anything

---

A. Only my knowledge and my knowing that it was done.

Q. But there's no acknowledgment. There's no acknowledgment of that. Is that correct?

A. You mean something in writing?

Q. Yes.

A. Not that I'm aware of.

Q. No signature from the prospective buyer?

A. That's not required.

Q. And just to clarify, you could have faxed the full package. Is that correct?

A. Oh, sure.

(*Id.* at 39-41.)

to him. As discussed at oral argument, however, the question of agency in a real estate transaction can get nettlesome, particularly when the same firm -- here, Century 21 -- represented both parties. *See, e.g.,* 15 Mass. Prac., Legal Forms § 3.1 (4th ed. through 2006). If anything, the unsettled agency issues provide further justification for denying Defendant's motion for summary judgment. *See Foisy v. Royal Maccabees Life Ins. Co., 356 F.3d 141, 150 (1st Cir. 2004)* ("Whether [and in what capacity] an individual has acted as an agent is a question of fact.") (citing *Pedersen v. Leahy, 397 Mass. 689, 493 N.E.2d 486, 487 (Mass. 1986))*.

III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's cross motion for summary judgment -- which he styles as a "partial" motion -- can be dealt with quickly. Plaintiff provides no compelling argument that the facts are so one-sided as to warrant an entry of judgment in his behalf.

To be sure, in *Smith,* the only **[*26]** decision discussing the statute's knowledge requirement which either party cites, the court held that there was no dispute of fact as to whether a seller's agent and her employer "knowingly" violated the statute when they failed to provide the purchasers with a copy of a lead paint report until the closing. *Id., 122 F. Supp. 2d at 274-75*. Here, however, genuine issues of material fact exist at least as to (1) whether Plaintiff, Nicola or Gerald were ever given pages 1 through 10 of the PTLPN, (2) whether such failure (if any) was a *knowing* violation, and (3) whether the intricate agency relationships warrant relief in either party's favor. Of course, the court does not suggest that these are the only factual issues which need to be resolved. For present purposes, however, the court believes that genuine issues of material fact do exist and, hence, that there are ample grounds to recommend that Plaintiff's cross-motion for summary judgment be denied.

IV. CONCLUSION

For the reasons stated, this court recommends that Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment each be DENIED. [5]

---

[5] The parties are advised that under the provisions of Rule 3(b) **[*27]** of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within**

DATED:  **[*28]** June 29, 2007

/s/ Kenneth P. Neiman

Chief Magistrate Judge

---

**End of Document**

---

**ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of HHS, 848 F.2d 271, 275 (1st Cir. 1988)*; *United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986)*; *Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983)*; *United States v. Vega, 678 F.2d 376, 378-379 (1st Cir. 1982)*; *Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980)*. *See also Thomas v. Arn, 474 U.S. 140, 154-55, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)*. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

◆ Positive
As of: August 6, 2026 5:52 PM Z

# *Kearney v. Elias*

United States District Court for the District of New Hampshire

August 11, 2008, Decided

Civil No. 07-cv-149-JL

### Reporter

2008 U.S. Dist. LEXIS 61364 *; 2008 DNH 143

Gary Kearney, Christopher R. Mulleavey, and Kathleen Mulleavey v. Brenda Elias and William H. Constant

**Notice:** NOT FOR PUBLICATION

**Prior History:** *Kearney v. Elias, 2008 U.S. Dist. LEXIS 119005 (D.N.H., Jan. 17, 2008)*

## Core Terms

hazard, paint, seller, summary judgment, lead-based, constant, disclosure, lessor, summary judgment motion, lessee, settlement, matter of law, real estate agent, sell property, evaluation report, misrepresent, undisputed, lease

**Counsel: [\*1]** For Gary Kearney, Christopher R. Mulleavey, Kathleen Mulleavey, Plaintiffs: Finis E. Williams, III, LEAD ATTORNEY, Law Office of Finis E. Williams, III, Concord, NH.

For Brenda Elias, William H. Constant, Defendants: James B. Kazan, LEAD ATTORNEY, Kazan & Shaughnessy, Manchester, NH.

**Judges:** Joseph N. Laplante, United States District Judge.

**Opinion by:** Joseph N. Laplante

## Opinion

### *MEMORANDUM AND ORDER*

Plaintiffs Gary Kearney, Christopher Mulleavey, and Kathleen Mulleavey, the purchasers of residential real estate in Franklin, New Hampshire, sued the seller, Brenda Elias, and her husband, William Constant, a real estate agent, seeking to recover damages for their failure to notify the plaintiffs about the presence of lead-based paint in the residence. The plaintiffs claim that the defendants' failure to notify them was negligent and in violation of state and federal law.

This court has jurisdiction over this matter under *28 U.S.C. §§ 1331* (federal question) and *1332(a)* (diversity of citizenship).

The parties have filed cross motions for summary judgment. The plaintiffs seek summary judgment as to liability on Counts I and VII, which allege violations of the Residential Lead-Based Paint Hazard Reduction Act of 1992, *42 U.S.C. § 4852d*, **[\*2]** against the defendants. The defendants seek summary judgment on all of the plaintiffs' federal claims (Counts I, II, and VII), arguing that the plaintiffs have failed to demonstrate damages recoverable under *42 U.S.C. § 4852d(b)(3)*. The defendants also seek summary judgment as to Count IV, which alleges that Elias is liable for negligent misrepresentation under state law.

After hearing oral argument on the cross motions, and after reviewing the parties' respective memoranda, objections, affidavits, and reply briefs, and for the reasons stated below, the plaintiffs' motion for summary judgment is granted as to Count I and denied as to Count VII. The defendants' motion is granted as to Count IV and denied as to Counts I, II, and VII.

### I. *APPLICABLE LEGAL STANDARD*

Under *Federal Rule of Civil Procedure 56*, a motion for summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)* (2008) (amended December 1, 2007); *see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)* (decided under prior, **[\*3]** substantially identical version of the rule); *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d*

*202 (1986)* (same). "The object of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Davila v. Corporacion de P.R. Para la Difusion Publica, 498 F.3d 9, 12 (1st Cir. 2007)* (internal quotation marks omitted).

In this context, a "fact is 'material' if it potentially affects the outcome of the suit . . . and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." *Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996)*; *see also Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001)*. In deciding whether summary judgment is proper, the court must view the entire record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Zyla v. Wadsworth, 360 F.3d 243, 246 (1st Cir. 2004)*. "Cross motions simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir. 2004)*.

Where, **[*4]** as is the case here with the plaintiffs' motion for summary judgment on their *§ 4852d* claims, "the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail 'unless the evidence that he provides on that issue is *conclusive.*'" *EEOC v. Union Independiente De La Autoridad de Acueductos Y Ancantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002)* (quoting *Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998))*.

## II. *BACKGROUND*

In 1997, the New Hampshire Department of Health and Human Services, Office of Health Management ("HHS") issued an Order of Lead Hazard Reduction (the "HHS Order") to Joe Griffith, the owner of a multi-unit dwelling at 18 West Bow Street in Franklin, New Hampshire. The HHS Order resulted from an inspection by an HHS representative, initiated when a child living at the address was found to be lead-poisoned. The HHS Order required Griffith to conduct a full inspection and to abate all lead exposure hazards, which included the paint on a number of surfaces in the interior of the property which were identified in an attached "Lead Investigation Survey Form." HHS records indicate that Griffith ignored the HHS Order, as did all subsequent **[*5]** owners including Elias and, eventually, the plaintiffs.

In 2000, Elias purchased the property at a foreclosure auction. She did not learn of the HHS Order, however,

until she received a letter from HHS some time after the purchase. The letter stated in reference to the property, in relevant part:

An Order of Lead Hazard Reduction was issued . . . .

> The requirements of the Order were transferred with the property when it was sold to you . . . [T]he Order remains outstanding . . . . [T]he Federal Lead-Based Paint Hazard Reduction Act, *42 U.S.C. [§] 4852d*, . . . requires sellers and landlords of most residential housing built before 1978 to disclose all available records and reports concerning lead-based paint and/or lead-based paint hazards to purchasers or tenants at the time of sale or lease . . . .

The letter also invited Elias to contact HHS for a copy of its Order, which Constant, Elias's husband and real estate business partner, subsequently did. Elias states that she also spoke with LuAnn Speikers of HHS, telling her about renovations Elias had done to the property since she had purchased it. [1] Elias claims that Speikers responded that "nothing more" needed to be done. So Elias did **[*6]** nothing further. HHS similarly did nothing to see whether the Order had in fact been satisfied.

Elias decided to sell the property in 2002. It was listed as an "exclusive agency listing," meaning that the owner reserved the right to sell the property independently without any commission to a real estate agent. Though Constant was initially identified as the "listing agent," the multiple listing so designated a different agent who worked for Constant and Elias, Heather Adams, as of August 29, 2002.

Constant showed the property to the plaintiffs, who eventually entered into a purchase and sale agreement with Elias. Constant claims that he informed Christopher Mulleavey about the history of the lead problems with the property in showing it to him prior to the sale, but Mulleavey denies that. And on a disclosure form, given to the plaintiffs as part of the transaction, Elias stated that she had no knowledge, reports, or records regarding lead-based paint or lead-based **[*7]** paint hazards in the property. The transaction closed in November 2002.

About a year later, the plaintiffs entered into a purchase

---

[1] These renovations were not intended to remediate lead-based paint hazards, but, by Elias's own account, "to make the building more rent-worthy." They consisted largely of repainting without removing the existing lead-based paint.

and sale agreement for the property with Paul and Virginia Gissing. While the plaintiffs were unaware of the HHS Order at that time, Kearney received a copy of it in March 2006, prior to when the transaction with the Gissings closed. Kearney says that he discarded the document without looking at it in detail because it was sent to his property management company, K&M Investments, which did not own the property. He asked HHS for another copy of the order on April 11, 2006. But Kearney did not disclose the existence of the HHS Order to the Gissings prior to their purchase of the property, which closed on April 22, 2006.

The Gissings later learned of the existence of the HHS Order from state officials, and subsequently threatened a legal action against the plaintiffs to recover the costs of compliance. The plaintiffs ultimately entered into a settlement agreement with the Gissings to pay $ 80,000 for a release of all claims. The agreement recites that the Gissings "secured two estimates for the abatement of the lead-based paint from the subject property for [*8] $ 59,870 and $ 94,500" and that the Gissings also "suffered other financial losses including loss of rental income and have incurred consulting fees and attorney's fees."

The plaintiffs then brought this suit against Constant and Elias, alleging violations of § 4852d and the New Hampshire Consumer Protection Statute, N.H. Rev. Stat. Ann. § 358-A:2, as well as negligence and negligent misrepresentation under state common law. They seek treble damages in the amount of $ 240,000, three times the $ 80,000 settlement paid to the Gissings.

## III. ANALYSIS

### A. The § 4852d Claims

#### 1. Liability

##### a. Elias (Count I)

The Residential Lead-Based Paint Hazard Reduction Act directs the Environmental Protection Agency to promulgate regulations that, among other things, require that a seller or lessor of housing offered for sale or lease, "before the purchaser or lessee is obligated under any contract to purchase or lease the housing," both "disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser or lessee any lead hazard evaluation report available to the seller or lessor . . . ." 42 U.S.C. §

4852d(a)(1)(B). [*9] The regulations so provide. 24 C.F.R. § 35.88(a)(3). They further provide that "[t]he seller or lessor shall provide the purchaser or lessee with any records or reports available to the seller or lessor pertaining to lead-based paint or lead-based paint hazards in the target housing being sold or leased." [2] Id. § 35.88(a)(4).

As an enforcement mechanism, the Act creates a private right of action in a purchaser or lessee against a seller or lessor: "Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." 42 U.S.C. § 4852d(b)(3). But it is the regulations, rather than the Act itself, that is the source of the enforceable disclosure [*10] obligations. Sweet v. Sheahan, 235 F.3d 80, 88 (2nd Cir. 2000).

The plaintiffs argue that they are entitled to summary judgment on Count I, alleging that Elias violated 42 U.S.C. § 4852d in her individual capacity, and Count VII, alleging that Constant violated 42 U.S.C. § 4852d in his capacity as an agent, because the undisputed facts demonstrate that both defendants were aware of the HHS Order but failed to disclose it to the plaintiffs prior to their purchase, in violation of § 4852d.

It is undisputed that, despite having notice of the pending HHS Order and her obligations as a seller under § 4852d, Elias disclosed neither the HHS Order nor the lead-based paint hazards to which it referred to the plaintiffs before selling them the property. These undisputed facts establish that Elias violated the Act's disclosure obligations in two ways. First, she failed to "disclose to the purchaser … the presence of [the] known lead-based paint, or [the] known lead-based paint hazards" indicated by the outstanding HHS Order. Second, she failed to "provide to the purchaser … [the] lead evaluation report available to [her]," namely, the "Lead Investigation Survey Form" appended to the HHS Order. See [*11] 42 U.S.C. § 4952(a)(1)(B); 24 C.F.R. §§ 35.88(a)(3), (4).

Elias nevertheless argues that she could not have failed

---

[2] "Target housing" is defined as "any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than 6 years of age resides in or is expected to reside in such housing) or any 0-bedroom dwelling." 24 C.F.R. § 35.86. It is undisputed that the property in this case is "target housing" because it was built before 1978 and no exceptions apply.

to disclose any "known lead-based paint hazards," based on her account that Spiekers, the HHS official, told Elias before she sold the property to the plaintiffs that "nothing more" needed to be done to satisfy the HHS Order. But even accepting this claim as true, as the court must for purposes of the plaintiffs' motion for summary judgment, would arguably eliminate Elias's liability under the Act only for failing to disclose the hazards themselves. It would not affect her liability for violating the Act's independent requirement that the seller "provide to the purchaser . . . any lead hazard evaluation report available to the seller." *See Pellegrini v. Cent. 21, No. 05-30077, 2007 U.S. Dist. LEXIS 54836, 2007 WL 2219331, at *7 (D. Mass. July 20, 2007)* (denying summary judgment for defendants on *§ 4852d* claim, despite fact that they had disclosed presence of lead-based paint hazards, where disputes remained as to whether they had provided the "lead hazard information pamphlet" required by *§ 4852d(a)(1)(A)*). The defendants do not address this theory of liability in opposing the plaintiffs' motion for **[*12]** summary judgment.

In fact, in the sole case on which the defendants rely on this point, the court entered summary judgment for the plaintiffs on a claim under *§ 4852d* premised on the same theory: that the defendants had failed to provide the plaintiffs with a report in their possession showing lead paint levels in the property prior to their agreement to purchase it, despite the defendants' knowledge of their obligation to do so. *Smith v. Coldwell Banker Real Est. Servs., Inc., 122 F. Supp. 2d 267, 274-75 (D. Conn. 2000)*. The court granted this relief because the defendants came forward with no "evidence rebutting the conclusion that [they] knowingly violated the Act by failing to ensure the purchasers were timely provided a copy of the lead paint report." *Id. at 274*. So too with the defendants here. Because the undisputed facts conclusively show that Elias violated the Act's mandate to provide the plaintiffs with a lead hazard evaluation report available to her, the plaintiffs' motion for summary judgment on Count I is granted. [3]

### b. *Constant (Count VII)*

In addition **[*13]** to regulations imposing disclosure requirements on sellers and lessors, the Act also directs the EPA to enact regulations that "require the agent, on behalf of the seller or lessor, to ensure compliance with

the requirements of" *§§ 4852d*. *42 U.S.C. § 4852d(a)(4)*. The EPA has done so. *See 24 C.F.R. § 35.94*. Because only Elias, and not Constant, was a "seller" of the property when the plaintiffs entered into the agreement to buy it, Constant can be liable under *§ 4852d* only if he was acting as Elias's agent in that transaction. The regulations define "agent" as "any party who enters into a contract with a seller or lessor, including any party who enters into a contract with a representative of the seller or lessor, for the purpose of selling or leasing target housing." [4] *Id. § 35.86*.

The undisputed material facts do not demonstrate that Constant was an "agent" under *24 C.F.R. § 35.86*. The plaintiffs have failed to show any "contract," either express or implied, between Constant and Elias for the purpose of selling the property. Indeed, the only evidence the plaintiffs have entered on this point is the fact that Constant was listed as a "listing agent" on a listing sheet for the property at some time prior to the sale. This alone is insufficient to conclusively establish the existence of a contractual relationship between Constant and Elias. Moreover, all of the relevant transactional documents recite that there was no agent for the sale. While Constant's conduct in showing the property on his wife's behalf might support a finding of agency under common law principles, it does not suffice to establish the "contract . . for the purpose of selling" the property necessary to make him an agent, and to impose the corresponding duties, under *§ 4852d(a)(4)*. The plaintiffs' motion for summary judgment on their *§ 4852d* count against Constant is denied.

### 2. **[*15]** *Damages* [5]

The parties have cross-moved for summary judgment on the issue of damages for the defendants' alleged *§ 4852d* violations. The plaintiffs argue that, as a matter of law, they are entitled to recover three times the amount

---

[3] As discussed *infra* part II.B, the court rejects the defendants' arguments for summary judgment in their favor on this claim.

---

[4] In the absence of any challenge to the validity of the EPA's interpretation of *§ 4852d* in its regulations, this court will follow the agency's construction of the statute. *See In re Slater Health Ctr., Inc., 398 F.3d 98, 103 (1st Cir. 2005)* (applying regulations as promulgated by an agency when neither party challenged them); *see also Sullivan v. Greenwood Credit Union, 520 F.3d 70, 75 (1st Cir. 2008)* (holding **[*14]** as a matter of statutory interpretation that a term's statutory definition trumps the term's definition at common law).

[5] For purposes of the following discussion, the court will assume that the plaintiffs can establish that Constant violated his obligations as an "agent" under the Act.

they paid in settlement of the Gissings' claims against the plaintiffs. The defendants, however, argue that the cost of that settlement is not recoverable against them because it resulted from the plaintiffs' alleged violations of § 4852d in selling the property to the Gissings, rather than the defendants' alleged violations of § 4852d in selling the property to the plaintiffs. The defendants further argue that, even they could be liable for the costs of the settlement, factual disputes remain as to the reasonableness of those costs as a measure of damages, precluding summary judgment for the plaintiffs on that issue.

As noted *supra,* "Any person who knowingly violates the provisions of [§ 4852d] shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount **[\*16]** of damages incurred by such individual." 42 U.S.C. § 4852d(b)(3). Neither the statute nor its implementing regulations contain any definition of the phrase "damages incurred." The defendants' argument that the phrase excludes what the plaintiffs paid the Gissings to settle their claim rests on the assumption that the phrase implies some causal connection between the violation of § 4852d and the damages in question. The assumption is reasonable: § 4852d(b)(3) cannot be read to impose liability on a seller for a buyer's injuries that are unrelated to the statutory violations at issue.

Indeed, under well-established principles of statutory construction, the common-law term "damages" in § 4852d(b)(3) must be given its common-law meaning, due to the absence of a different definition in the statute. *See* Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 127 S. Ct. 2201, 2209, 167 L. Ed. 2d 1045 (2007). A causal relationship with the defendant's conduct is part of the common-law definition of "damages": "[a] pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights, *through* the unlawful act or omission or negligence **[\*17]** of another." *Black's Law Dictionary* 351-52 (5th ed. 1979) (emphasis added); *see also Restatement (Second) of Torts* § 12A (1979) ("'damages' is used . . . to denote a sum of money awarded to a person *injured by* the tort of another") (emphasis added).

The court cannot say, however, that the plaintiffs' claimed injuries here so lack any causal connection to the defendants' violations of § 4852d that they cannot be liable for those injuries as a matter of law. There are genuine issues of fact material to what would have happened if the defendants had disclosed the lead hazard evaluation report to the plaintiffs before they agreed to buy the property, as required by the Act. Kearney has averred, for example, that the plaintiffs simply would not have gone forward with their plans to purchase the property, presumably to avoid the costs of remediating the hazards. The defendants argue, in essence, that the plaintiffs were able to avoid those costs anyway by selling the property to the Gissings without complying with the disclosure requirements of § 4852d. But, more accurately, the plaintiffs attempted to do so, but their attempt was thwarted when the Gissings learned of the lead hazards on **[\*18]** the property subsequent to the purchase and threatened to sue the plaintiffs for violating § 4852d, leading the plaintiffs to pay the Gissings to settle that claim.

This sequence of events precludes the ruling, as a matter of law, that the defendants' failure to comply with § 4852d did not cause the plaintiff's injury in the form of their payment to settle the Gissings' claim. It can be argued that the plaintiffs would not have faced that claim had they complied with their own obligations under § 4852d, but it can also be argued that the plaintiffs would not even have incurred those duties in the first place had the defendants honored their own obligations under the Act. Furthermore, even if the plaintiffs had made the required disclosures to the Gissings, it is a reasonable inference on the record as it stands that they either would have refused to buy the property or agreed to go through with the transaction only if the plaintiffs agreed to remediate the lead hazards first (or at least reduce the purchase price to reflect the cost to the Gissings to do that work themselves). In any of these scenarios, the plaintiffs would have suffered some financial injury traceable to the defendants' **[\*19]** own nondisclosure. Determining the relative likelihood of these various outcomes, and the corresponding amount of loss to the plaintiffs, are ultimately factual dilemmas for the jury. *See, e.g.,* Wortley v. Camplin, 333 F.3d 284, 295 (1st Cir. 2003) ("Proximate causation and intervening cause are usually issues for the jury to resolve.").

The defendants' real argument seems to be that, since they are no more culpable of violating § 4852d than are the plaintiffs, it is unfair to allow them to recover under the statute, particularly in an amount three times the amount of their damages. But the Act does not itself impose any bar on recovery under these circumstances and, even at common law, this kind of "unclean hands" defense is available only against equitable relief, not

claims for damages. [6] *See, e.g.,* 2 Dan B. Dobbs, *Law of Remedies* § 9.6, at 626-27 (2d ed. 1993). Indeed, in considering analogous claims for common-law fraud, courts have rejected the "argument that a tort action for fraudulent misrepresentation against the seller of real property is somehow waived when the buyer in turn conveys the property to a third party." *Bodunov v. Kutsev, 164 P.3d 1212, 1219, 164 P.3d 1212 (Or. Ct. App. 2007)*; **[\*20]** *see also Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc., 88 A.D.2d 461, 453 N.Y.S.2d 750, 754 (N.Y. App. Div. 1982)*; 37 C.J.S. *Fraud* § 117 (1994).

The **[\*21]** defendants do not provide any authority on this point. They rely on the decision of the court of appeals in *Mason ex rel. Heiser v. Morrisette, 403 F.3d 28 (1st Cir. 2005)*, for the proposition that "one should not expect *[§ 4852d]* to be an end-all or be-all answer to the damages arising from the failure to make a federally required disclosure." *Mason,* however, did not consider the scope of the damages available under *§ 4852d(b)(3)*, but simply whether it conferred a private right of action to the minor children of lessees injured by lead hazards in their apartment which were not disclosed by the owner as required by the Act. [7] *403 F.3d at 28*.

In *Mason,* the court of appeals held that the children lacked standing to sue because "the plain language of the statute limits recovery under *§ 4852d(b)(3)* to a 'purchaser or lessee,'" a limitation the court deemed

"consistent with the purpose of the disclosure provision" to allow purchasers or lessors to make an informed decision as to whether to contract for property with lead-based **[\*22]** paint hazards. *Id. at 31*. So *Mason* does not intimate that, when purchasers like the plaintiffs here are deprived of that opportunity, their damages should be limited in the way the defendants suggest. [8]

By the same token, however, the plaintiffs have provided no authority in support of their view that, because they were victimized by the defendants' failure to make the disclosures required by *§ 4852d*, the plaintiffs are entitled to recover, as a matter of law, their settlement payment to the Gissings. Drawing again on the (perhaps imperfect) analogy to indemnification principles, *see* note 6, *supra,* a plaintiff seeking recovery from a defendant for the cost of settling a third party's liability against the plaintiff arising from the defendant's conduct must show (1) actual liability to the third party, (2) the absence of a good defense to that liability, and (3) that the amount of the settlement was reasonable. [9] 42 C.J.S. *Indemnity* § 28 (1994); *see also, e.g., Gulf Grp. Holdings, Inc. v. Coastal Asset Mgmt. Corp., 516 F. Supp. 2d 1253, 1262-63 (S.D. Fla. 2007)*; **[\*24]** *St. Paul Fire & Marine Ins. Co. v. Michelin Tire Corp., 12 Ill. App. 3d 165, 298 N.E.2d 289, 292 (Ill. App. Ct. 1973)*; *Nat'l*

---

[6] There is a common-law rule that "[w]here a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land . . . , which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenses properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition." **Restatement (First) of Restitution § 95** (1937). But, assuming that the defendant's liability to the plaintiffs for their costs of discharging their own liability to the Gissings under *§ 4852d* is analogous to this principle, and assuming further that *§ 4852d* should be read to incorporate this rule--points on which the court does not rule at this time--the defendants have not argued, much less attempted to show as a matter of law, that the plaintiffs "acquiesced in the continuation of the condition" of the property under this rule.

[7] Coincidentally, the property in question in *Mason,* 18-A West Bow Street, Franklin, is right next to the property at issue in this case, 18 West Bow Street, Franklin.

[8] The court in *Smith,* in rejecting the argument that *§ 4852(b)(3)*'s "'knowingly violate' standard requires a showing of bad faith or willfullness," *122 F. Supp. 2d at 273*, reasoned that "the automatic trebling of the plaintiff's actual damages incurred . . . serves as an important incentive to those directly injured by the violation to seek compensation for their injury as well as their effort in enforcing the law." *Id. at 274*. Thus, like the circuit in *Mason,* the court in *Smith* was not considering the scope of the damages available, but a different limitation on *§ 4852d(b)(3)*, namely, the scienter requirement. In any event, there is authority contradicting the *Smith* court's "directly injured" gloss: in enacting the regulation which mirrors *§ 4852d(b)(4)*, the EPA appears to have taken a less restrictive view of the damages recoverable, explaining, "This provision allows the purchaser or lessee to seek direct compensation for *any* damages **[\*23]** incurred based on the seller's or lessor's noncompliance." *61 Fed. Reg. 9064, 9078 (Mar. 6, 1996)* (emphasis added). Finally, even assuming *Smith* was correct to suggest that recovery is restricted to "those directly injured by the violation," the record does not permit the conclusion, as a matter of law, that the plaintiffs were not "directly injured" by the defendants' nondisclosure, for the reasons already discussed.

[9] This rule applies where, as here, the plaintiff has failed to notify the defendant of the third party's claim before settling it. 42 C.J.S. *Indemnity* § 28.

*Union Fire Ins. Co. of Pittsburgh v. Red Apple Grp., Inc., 309 A.D.2d 657, 767 N.Y.S.2d 68, 69 (N.Y. App. Div. 2003)*.

The plaintiffs have come forward with sufficient evidence on these elements to avoid summary judgment against them on the issue of damages. Though the plaintiffs' liability to the Gissings under *§ 4852d* has not been conclusively established, given factual disputes as to when Kearney learned of the lead hazards vis-a-vis the status of the parties' purchase and sale agreement, neither can the court rule that the plaintiffs were not liable to the Gissings or had a good defense to their claim as a matter of law. The plaintiffs have also come forward with evidence, principally the affidavit of the Gissings' property manager, tending to show that they suffered more than $ 80,000 in losses as a result of the plaintiffs' nondisclosure and that the settlement amount was therefore reasonable, particularly in light of the damage multiplier [*25] contained in *§ 4852d(b)(3)*. To be sure, the defendants have responded with evidence to the contrary, but the ultimate resolution of this conflicting evidence presents a question for the jury. *See, e.g., Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1094-95 (1st Cir. 1989)*. Neither party is entitled to summary judgment on the issue of damages.

**B.** ***The state-law claim against Elias "as a real estate agent" (Count IV)***

The plaintiffs allege state-law claims of negligent misrepresentation against Elias in her individual capacity (Count III) and in her capacity "as a real estate agent" (Count IV) based on her statements "that there were no known lead-based paint hazards or lead-based paint disclosures." Count IV also alleges that Elias "as real estate agent, made a misrepresentation that said agent had informed the seller (herself) of seller's obligation under *42 U.S.C. § 4852(d)* and is aware of her responsibility to insure compliance."

The defendants move for summary judgment on the ground that Elias cannot be liable as a seller and also as an agent for failing to make a disclosure to herself as the seller. Whatever the merits of this theory as a metaphysical matter, the plaintiffs have **[*26]** not defended this count in response to the defendants' summary judgment motion, and have presented no evidence that Elias acted as a real estate agent, as opposed to the seller, in selling the property to the plaintiffs. The defendants are entitled to summary judgment on Count IV.

**IV.** ***CONCLUSION***

For the foregoing reasons, the cross-motions for summary judgment are granted in part and denied in part. The plaintiffs' motion for summary judgment is granted as to Elias's liability on Count I. The defendants' motion for summary judgment is granted as to Count IV. The motions are otherwise denied.

**SO ORDERED.**

/s/ Joseph N. Laplante

Joseph N. Laplante

United States District Judge

Dated: August 11, 2008

---

**End of Document**

 Neutral

As of: August 6, 2026 5:53 PM Z

# *Patz v. Sureway Supermarket*

United States District Court for the Eastern District of Louisiana

August 27, 2018, Decided; August 27, 2018, Filed

CIVIL ACTION NO. 17-3465 SECTION: "E" (1)

**Reporter**

2018 U.S. Dist. LEXIS 145211 *; 2018 WL 4076358

VIVIAN PATZ, ET AL., Plaintiffs VERSUS SUREWAY SUPERMARKET, ET AL., Defendants

**Subsequent History:** Partial summary judgment denied by *Patz v. Sureway Supermarket, 2018 U.S. Dist. LEXIS 213505 (E.D. La., Dec. 19, 2018)*

Summary judgment granted, in part, summary judgment denied, in part by, Partial summary judgment granted by, in part, Partial summary judgment denied by, in part, Motion denied by *Patz v. Sureway Supermarket, 2018 U.S. Dist. LEXIS 215988 (E.D. La., Dec. 26, 2018)*

Motion granted by, Motion denied by, As moot *Patz v. Sureway Supermarket, 2019 U.S. Dist. LEXIS 12697 (E.D. La., Jan. 27, 2019)*

Motion denied by *Patz v. Sureway Supermarket, 2019 U.S. Dist. LEXIS 126629 (E.D. La., July 30, 2019)*

## Core Terms

partial summary judgment, paint, summary judgment, lead-based, hazard, moving party, essential element, cross-motion, non-moving, genuine issue of material fact, matter of law, disclosure, movant, maple

**Counsel:** [*1] For Michael Patz, Vivian Patz, Previously named Vivian Blackledge, Plaintiff: William Brock Most, LEAD ATTORNEY, Law Office of William Most, New Orleans, LA.

For Walter H. Maples, Inc., Shelly Jambon, SHH Properties, L.L.C., Defendant: Sean Renee Dawson, Kathleen Diane Lambert, LEAD ATTORNEY, Stephenson, Chavarri & Lambert LLC, New Orleans, LA.

**Judges:** SUSIE MORGAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** SUSIE MORGAN

# Opinion

## ORDER AND REASONS

Before the Court are: (1) a motion for partial summary judgment filed by Plaintiffs Vivian and Michael Patz,[1] and (2) a cross-motion for partial summary judgment filed by Defendants Walter H. Maples, Inc., Shelly Jambon, and SHH Properties, L.L.C.[2] Defendants oppose Plaintiffs' motion,[3] and Plaintiffs oppose Defendants' cross-motion.[4] For the reasons that follow, Plaintiffs' motion for partial summary judgment is **DENIED**, and Defendants' cross-motion for partial summary judgment is **GRANTED**.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs Vivian and Michael Patz were employed by Defendant Walter H. Maples, Inc., doing business as Sureway Supermarket.[5] Plaintiffs allege Defendant Walter H. Maples, Inc. fired them in April, 2016 because Plaintiff Vivian Patz was pregnant.[6] Plaintiffs also allege [*2] they were evicted from an apartment provided as a condition of their employment because of Vivian Patz's pregnancy and that they were not given any disclosures regarding lead-based paint or lead-based paint hazards before the beginning of their

---

[1] R. Doc. 72.

[2] R. Doc. 82.

[3] R. Doc. 81.

[4] R. Doc. 85.

[5] R. Doc. 59 at 1, ¶2; R. Doc. 64 at 1, ¶2.

[6] R. Doc. 59 at 1-2.

tenancy.[7] On April 14, 2017, Plaintiffs filed suit against Defendants Walter H. Maples, Inc., Shelly Jambon, and SHH Properties, L.L.C. (collectively, "Defendants").[8] In their complaint, Plaintiffs allege violations of *Title VII of the Civil Rights Act*, the *Pregnancy Discrimination Act*, the *Americans with Disabilities Act*, the *Fair Housing Act*, the *Residential Lead-Based Paint Hazard Reduction Act ("RLBPHRA")*, the *Louisiana Pregnancy Discrimination Act*, and the *Louisiana Unfair Trade Practices Act*.[9] Plaintiffs also assert trespass and breach-of-contract claims under Louisiana law.[10] The instant motion and cross-motion for partial summary judgment concern Plaintiffs' claim against all Defendants under the RLBPHRA,[11]

On July 8, 2018, Plaintiffs filed a motion for summary judgment against all Defendants, seeking judgment on their RLBPHRA claim.[12] Plaintiffs allege before the beginning of their tenancy they were not provided notices regarding lead-based **[*3]** paint and lead-based paint hazards, as required by the RLBPHRA.[13] Plaintiffs argue they have proven all the elements of a claim under the Act, and are entitled to partial summary judgment on their RLBPHRA claim.[14] On August 3, 2018, Defendants filed an opposition to Plaintiffs' motion for partial summary judgment.[15] Defendants admit Plaintiffs did not receive notices regarding lead-based paint and lead-based paint hazards, but argue Plaintiffs have not proven Defendants knowingly violated the RLBPHRA.[16] Plaintiffs filed a reply on August 22, 2018.[17]

On August 3, 2018, the same day they filed their opposition to Plaintiffs' motion for partial summary judgment, Defendants filed a cross-motion for partial

---

[7] *Id.* at 2.

[8] R. Doc. 1.

[9] *Id.*

[10] *Id.*

[11] R. Docs. 72, 82.

[12] R. Doc. 72.

[13] *Id.*

[14] *Id.*

[15] R. Doc. 81.

[16] R. Doc. 81, 82.

[17] R. Doc. 94.

summary judgment on Plaintiff's RLBPHRA claim.[18] They argue Plaintiffs cannot recover under the Act because Plaintiffs have not alleged Defendants knowingly violated the Act.[19] As a result, Defendants seek partial summary judgment in their favor on the RLBPHRA claim.

On August 14, 2018, Plaintiffs filed an opposition to Defendants' cross-motion for summary judgment.[20] Plaintiffs reiterate their argument that they have established all the essential elements of a RLBPHRA violation.[21] They argue Defendants **[*4]** knowingly violated the RLBPHRA.[22] They admit Plaintiffs did not assert a claim for damages independent of Defendant's failure to disclose, but assert the Act nevertheless permits the award of a statutory penalty.[23]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] "An issue is material if its resolution could affect the outcome of the action."[25] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[26] All reasonable inferences are drawn in favor of the non-moving party.[27] There is no genuine issue of material fact if, even viewing the

---

[18] R. Doc. 82.

[19] R. Doc. 81, 82.

[20] R. Doc. 85.

[21] *Id.* at 4-5.

[22] *Id.* at 5-7.

[23] *Id.* at 7-8.

[24] *FED. R.CIV. P. 56*; *see also* *Celotex, 477 U.S. at 322-23*.

[25] *DIRECTV, Inc. v. Robson, 420 F.3d 532, 536 (5th Cir. 2005)*.

[26] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398-99 (5th Cir. 2008)*; *see also* *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)*.

[27] *Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)*.

evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[28]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the **[*5]** record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy *Rule 56*'s burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[29]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish **[*6]** an essential element of the non-movant's claim.[30] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[31] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[32] "[U]nsubstantiated

assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. '*Rule 56* does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[33]

## LAW AND ANALYSIS

To prevail on a motion for partial summary judgment, a movant bears the burden of establishing the absence of any genuine issues of material fact and the movant's entitlement to judgment as a matter of law. The Court finds Plaintiffs have failed to meet their burden of showing they are entitled to judgment as a matter of law on their RLBPHRA claim. The Court further finds Defendants have met their **[*7]** burden to show Plaintiffs cannot recover against them under the RLBPHRA as a matter of law.

It is undisputed that Plaintiffs resided at 176 Naccari Lane as lessees.[34] The parties agree the property is owned by Defendant SHH Properties, L.L.C.[35] Plaintiffs present an appraisal report stating the property at 176 Naccari Lane was built in 1973[36] and electronic correspondence with the Jefferson Parish Assessor's Office confirming the year the property was built.[37] Defendants argue they do not know when the property was built,[38] but fail to present any evidence contradicting Plaintiff's summary judgment evidence the

---

upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in *Rule 56(e)*, or (3) submit an affidavit explaining why further discovery is necessary as provided in *Rule 56(f)*." *Id. at 332-33, 333 n.3*.

[33] *Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998)* (citing *Celotex, 477 U.S. at 324*; *Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994)* and quoting *Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)*).

[34] R. Doc. 72-2 at 1, ¶1; R. Doc. 96 at 1, ¶1.

[35] R. Doc. 81-1 at 1, ¶1; R. Doc. 85-1 at 1, ¶1.

[36] R. Doc. 85-5 at 6.

[37] R. Doc. 72-7 at 1.

[38] R. Doc. 72-2 at 1, ¶4; R. Doc. 96 at 1, ¶4.

---

[28] *Hibernia Nat. Bank v. Carner, 997 F.2d 94, 98 (5th Cir. 1993)* (citing *Amoco Prod. Co. v. Horwell Energy, Inc., 969 F.2d 146, 147-48 (5th Cir. 1992))*.

[29] *Celotex, 477 U.S. at 322-24*.

[30] *Id. at 331-32* (Brennan, J., dissenting).

[31] *See id. at 332*.

[32] *Id. at 332-33*. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied

2018 U.S. Dist. LEXIS 145211, *7

property was built in 1973. There is no genuine issue of material fact that the property at 176 Naccari Lane was built in 1973.

It is undisputed that none of the Defendants provided either Plaintiff with any lead disclosure notice of the kind approved by the Environmental Protection Agency (EPA).[39] The parties agree none of the Defendants knew of any lead-based paint hazards at 176 Nacarri Lane,[40] and none of the Defendants knew a disclosure concerning lead-based paint was required.[41] The Court finds the material facts are not in dispute.

The Court finds Defendants are entitled to summary judgment **[*8]** as a matter of law on Plaintiffs' RLBPHRA claim because they have shown Plaintiffs cannot establish an essential element of their claim. The Act requires every lessor of housing built prior to 1978 to provide each lessee with a lead hazard information pamphlet and a disclosure of the presence of any known lead-based paint or lead-based paint hazards in the housing.[42] The Act permits recovery only when lessors "knowingly violate" its provisions.[43] The plain language of the statute requires a plaintiff bringing claims under the RLBPHRA to show a defendant knowingly violated the Act's provisions.[44] The statute does not otherwise permit private recovery.[45] As a

result, proving a defendant's violation was knowing is an essential element of establishing a claim under the Act.[46] Although Plaintiffs did not receive the disclosures mandated by the RLBPHRA,[47] they cannot recover because the undisputed facts show Defendants did not *knowingly* violate the RLBPHRA.[48]

The RLBPHRA and its implementing regulations make liable "[a]ny person who knowingly violates the provisions" of the Act,[49] but do not specify whether such a person must *know* of the **[*9]** lead-based paint hazard or *know* of the Act's requirements. The Fifth Circuit has not addressed this question, and other courts have offered various interpretations of this provision.[50] This

---

[39] R. Doc. 72-2 at 1, ¶3; R. Doc. 96 at 1, ¶3.

[40] R. Doc. 81-1 at 2, ¶10; R. Doc. 85-1 at 2, ¶10.

[41] R. Doc. 81-1 at 2, ¶13; R. Doc. 85-1 at 2-3, ¶13 (mislabeled as ¶12).

[42] *42 U.S.C. § 4852d(a)(1)*; *40 C.F.R. § 745.107*.

[43] *42 U.S.C. § 4852d(b)(3)*; *40 C.F.R. § 745.118*.

[44] Plaintiffs rely on *Price ex rel. Massey v. Hickory Point Bank & Tr., Tr. No. 0192, 362 Ill. App. 3d 1211, 841 N.E.2d 1084, 299 Ill. Dec. 352 (Ill. App. Ct. 2006)* to argue "[a] landlord's subjective knowledge of the [RLBPHRA]'s requirements is not an element of liability under the Act," R. Doc. 72-1 at 4; R. Doc. 85 at 5. *Price* is inapposite because it does not address private causes of action brought under the RLBPHRA. The *Price* plaintiffs sought to establish that defendants were *negligent* for failing to disclose a lead-based paint hazard, in violation of federal law. *Price, 841 N.E.2d at 1087*. The court found the defendants had violated the statute, and "plaintiffs were not required to show defendants' knowledge . . . in order to sustain their negligence claim based on violation of a statute." *Id. at 1092*.

[45] Plaintiffs argue the RLBPHRA allows for statutory damages.

R. Doc. 85 at 7-8. They cite *40 C.F.R. § 745.118(f)*, which authorizes civil sanctions "pursuant to *TSCA section 16* (*15 U.S.C. § 2615*)." *15 U.S.C. § 2615(a)*, which governs civil sanctions under the *Toxic Substances Control Act*, makes violators "liable *to the United States* for a civil penalty," to be assessed "by the Administrator [of the Environmental Protection Agency]." *15 U.S.C. § 2615(a)* does not authorize a private award of damages. *Cf. McCready v. Main St. Tr., Inc., No. 07-CV-2096, 2008 U.S. Dist. LEXIS 59257, 2008 WL 3200651, at *3 (C.D. Ill. Aug. 5, 2008)* ("[W]hen no costs have been incurred by Plaintiffs as a result of the alleged violation of the [RLBPHRA,] . . . nominal damages are not available."). *But see Erwin v. Roe, 928 N.E.2d 609, 619 (Ind.App. 2010)*.

[46] Plaintiffs rely on *Sipes ex rel. Slaughter v. Russell, 89 F.Supp.2d 1199, 1202 (D.Kan. 2000)*, which enumerates the four elements of a RLBPHRA violation. R.Doc. 72-1 at 4. The *Sipes* court dismissed an RLBPHRA claim because it found there was no violation of the Act, *Sipes, 89 F.Supp.2d at 1201-04*. It did not reach the question of whether there was a *knowing* violation.

[47] It is undisputed that Plaintiffs were lessees at 176 Naccari Lane, Defendant SHH Properties, L.L.C. was the owner of the property, and no Defendant made the disclosures the RLBPHRA requires. R. Doc. 72-2 at 1, ¶1-3; R. Doc. 96 at 1, ¶1-3. There is no genuine dispute of material fact that the housing was built before 1978, R. Doc. 72-7 at 1; R. Doc. 85-5 at 6, and their lease began after 1996, Doc. 72-2 at 1, ¶5; R. Doc. 96 at 2, ¶5. Defendants failed to comply with the RLBPHRA's requirements. *See Sipes, 89 F.Supp.2d at 1202* (enumerating elements of RLBPHRA violation).

[48] R. Doc. 81-1 at 2, ¶10, 13; R. Doc. 85-1 at 2-3, ¶10, 13 (mislabeled as ¶12).

[49] *42 U.S.C. § 4852d(b)(3)*.

[50] *Compare* **Morris v. Flaig, 511 F.Supp.2d 282, 301 (E.D.N.Y. 2007)** (accepting defendant's argument that he was not liable because he "had no knowledge of any lead hazard

2018 U.S. Dist. LEXIS 145211, *9

Court need not resolve the issue here: the uncontested facts show no Defendant had knowledge either of the Act's requirements or of a lead-based paint hazard in the property at 176 Naccari Lane.[51] Because these facts are undisputed, there is no genuine issue of material fact as to whether Defendant knowingly violated the RLBPHRA.

Plaintiffs have failed to call the Court's attention to any evidence establishing a genuine factual dispute with respect to whether Defendants knowingly violated the RLBPHRA.[52] As a result, Defendants' cross motion for partial summary judgment must be granted.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion for partial summary judgment filed by Plaintiffs Vivian and Michael Patz on their claim under the Residential Lead-Based Paint Hazard Reduction Act ("RLBPHRA") be and hereby is **DENIED**.[53]

**IT IS FURTHER ORDERED** that the cross-motion for partial summary judgment filed by Defendants Walter H. Maples, Inc., Shelly Jambon, and SHH Properties, L.L.C. **[*10]** on Plaintiffs' RLBPHRA claim be and hereby is **GRANTED**.[54]

**New Orleans, Louisiana, this 27th day of August, 2018**.

/s/ Susie Morgan

---

at the lease inception") *with* Smith, 122 F.Supp.2d at 274 (finding liable a real estate agent who failed to disclose despite knowing "the Act's requirement"), *and* Erwin, 928 N.E.2d. at 618 (addressing both whether Defendant "knew about the leadbased paint in the house" and whether she had "knowledge of the RLPHRA or any of its requirements.").

[51] R. Doc. 81-1 at 2, ¶10, 13; R. Doc. 85-1 at 2-3, ¶10, 13 (mislabeled as ¶12).

[52] Plaintiffs also have failed to allege facts allowing the Court to find they suffered damages caused by not receiving lead disclosures, which is fatal to their claim. To recover under the RLBPHRA, plaintiffs must also allege damages caused by defendant's failure to disclose. *See* Kaye, 2008 U.S. Dist. LEXIS 121952, 2008 WL 5188712 at *5 (dismissing plaintiff's RLBPHRA claim because he had not "put forth a plausible, non-speculative claim that there were actual 'damages incurred'"). Plaintiffs have failed to do so here.

[53] R. Doc. 72.

[54] R. Doc. 82.

**SUSIE MORGAN**

**UNITED STATES DISTRICT JUDGE**

---

**End of Document**