**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JESSE BRUMBAUGH, *et al.*,** | : | **Case No. 1:25-cv-00269-DRC** |
| **Plaintiffs,** | : | **JUDGE DOUGLAS R. COLE** |
| **v.** | : | |
| **BARRETT SINGLETON, *et al.*,** | : | |
| **Defendants.** | : | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AS TO COUNT I OF THEIR COMPLAINT (VIOLATION OF RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT OF 1992)**

**(ORAL ARGUMENT REQUESTED)**

## I. Defendants have not demonstrated any genuine dispute of material fact, and Plaintiffs are entitled to judgment on the issue of liability.

Defendants have admitted every fact necessary for the Court to determine that they knowingly violated the RLPHRA. *See generally* Defendants' Response to Proposed Undisputed Facts ("Def. Facts"), Doc. 24.

Defendants concede that the Property at issue contains a residence constructed before 1978; that they owned the Property for multiple years before selling it to Plaintiffs; and that, during their ownership, they were issued the Order and the Notice of Compliance from the City of Cincinnati Health Department. Def. Facts, Doc. 24, at PageID 726, ¶¶ 1-4 and 11. They admit that those documents contained lead hazard reports, performed by licensed lead risk assessors, relating to the present of

lead paint hazards affecting the Property. *Id.* at PageID 726-727, ¶¶ 6-7, 12, and 13. The acknowledge that these documents imposed affirmative obligations regarding lead remediation, ongoing monitoring and compliance, and disclosure to potential purchasers and tenants. *Id.* at PageID 726-727, ¶¶ 5, 8, 9, 10, and 14. They do not dispute that, despite the specific disclosure warnings in the Order and the Notice of Compliance, they never provided either document to Plaintiffs before entering into a purchase contract or closing on the sale of the Property. *Id.* at PageID 727, ¶¶ 15-17, and 21. And they even accept that they affirmatively represented to Plaintiffs in a written disclosure form that “Seller has no reports or records pertaining to lead-based paint and/or lead based paint hazards in the housing.” *Id.* at PageID 727, ¶¶ 18-20.

The only facts that Defendants offer in opposition are the following.

1) Defendants stated on the Disclosure Form that “[a]ll friction surfaces have been cleared by Cincinnati Health Dept.” Def. Facts, Doc. 46 at PageID 728.
2) Defendants allegedly did not have the Order or the Notice of Compliance in their possession at the time of closing. Affidavit of Barrett Singleton, Doc. 23-1, at PageID 678; Affidavit of Claire Singleton, Doc. 23-2 at PageID 681.
3) Defendants allegedly believed that they were only required to provide records and reports in their possession at the time. Affidavit of Barrett Singleton, Doc. 23-1, at PageID 677; Affidavit of Claire Singleton, Doc. 23-2 at PageID 680.

But none of these facts, even if taken as true, matter for purposes of liability under the RLPHRA. An incomplete reference to involvement by the Health Department is not the same thing as disclosing the Order or the Notice of Compliance. Defendants

have not provided any specific facts to show that the Order or Notice of Compliance were unavailable for disclosure, and actual possession is not a prerequisite to the disclosure obligations under the RLPHRA. And subjective misunderstanding of their legal obligations does not mean that Defendants were unaware of their actions.

Defendants also predictably argue that Plaintiffs have not proven damages, but that is not necessary for partial summary judgment as to liability alone.

Thus, Defendants have provided no reason for this Court to refrain from entering partial summary judgment on the issue of Defendants' liability under the RLPHRA. The Court should therefore grant Plaintiffs' motion, Doc. 22.

## II. The RLPHRA requires disclosure of known lead hazards and production of lead hazard reports, and Defendants' reference to the Health Department on the disclosure form does not satisfy these obligations.

The RLPHRA requires in relevant part that, "before the purchaser * * * is obligated under any contract to purchase" target housing, the seller must "disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards" *and* "provide to the purchaser * * * any lead hazard evaluation report available to the seller." 42 U.S.C. § 4852d(a)(1)(B); see also 24 C.F.R. § 35.88; 40 C.F.R. § 745.107. It is undisputed that the Property is target housing under the RLPHRA; that Defendants had been issued lead hazard reports that were subject to the disclosure requirement in this statute; that those documents even contained warnings to the Defendants of their legal obligations; and that Defendants nevertheless failed to provide the documents to Plaintiffs at any time.

Defendants cannot escape this legal reality by merely pointing to an incomplete and misleading reference to the Health Department.

For one thing, the Health Department did not clear "[a]ll friction surfaces" in the house as Defendants wrote on the disclosure form. First Aff. of Jennifer Foster, Doc. 20-3, at PageID 554. The Order specifically noted that the basement was inaccessible and not tested, because Defendants did not give the City access to that area. City Records, Doc. 20-2 at PageID 486 and 489. And the Notice of Compliance only related to those areas of the Property that were initially identified as hazardous in the Order. Compare *id.* at PageID 491 to *id.* at PageID 538. This is significant because the Order "highly recommended that any future disturbance" of untested areas "be treated with caution and safety measures taken." *Id.* at PageID 489. Thus, Defendants' concealed that an entire area of the Property contained untested and unremediated lead hazards. That is a clear violation of the first disclosure requirement in § 4852d(a)(1)(B)—that the seller "disclose to the purchaser or lessee the presence of * * * any known lead-based paint hazards."

But aside from that misrepresentation, the fact remains that Defendants did not provide the Order or the Notice of Compliance to Plaintiffs. That is a violation of "the Act's independent requirement that the seller provide to the purchaser * * * any lead hazard evaluation report available to the seller." *Kearney v. Elias*, No. 07-cv-149-JL, 2008 U.S. Dist. LEXIS 61364, *11 (D.N.H. Aug. 11, 2008). There is no constructive notice defense under the statute; strict compliance is required. *Naegele v. Tonius*, Case No. CV06-7617-GW(PLAx), 2007 U.S. Dist. LEXIS 110862, *7 (C.D. Cal. Jul. 9,

2007) ("Substantial compliance does not appear to be sufficient under the Lead-Based Paint Act.") (citing *Keegan v. Kivitz*, Case No. C 04-04470 SI, 2005 U.S. Dist. LEXIS 49137 (N.D. Cal. Aug. 22, 2005 and *Smith v. Coldwell Banker Real Estate Servs.*, 122 F. Supp. 2d 267, 273–74 (D. Conn. 2000)). And Defendants have no colorable argument that they complied in any way with the second requirement under § 4852d(a)(1)(B)—that a seller of target housing must "provide to the purchaser * * * any lead hazard evaluation report available to the seller."

## III. Actual possession of lead hazard reports is not a prerequisite to the RLPHRA's disclosure obligations.

Defendants' self-serving statements that they did not have the Order and the Notice of Compliance in their possession when signing the disclosure form have no bearing on this case. Affidavit of Barrett Singleton, Doc. 23-1, at PageID 678; Affidavit of Claire Singleton, Doc. 23-2 at PageID 681.

Actual possession of lead hazard reports at any particular point in time is not required under the statute. What the statute says is that the seller must "provide to the purchaser * * * any lead hazard evaluation report *available to the seller*." *Id.* (emphasis added). And Defendants have provided no specific facts to explain how the Order and Notice of Compliance were unavailable to them. On a telephone conference with the Court, Defendants' counsel suggested that, possibly, these documents were given to Defendants' contractors. The Court wisely questioned this, asking whether Defendants would be excused from providing the documents to Plaintiffs if Defendants had thrown the documents in the trash. The point is obvious: Defendants cannot claim that the documents are "unavailable" simply because they put the

documents somewhere; the documents remained in Defendants' legal custody and control. And now, Defendants do not even attempt to explain how or why they did not have "actual possession" of the documents. Were they thrown away? Did someone else have them? Were they just in a different location than where Defendants physically stood when signing the purchase contract? This argument amounts to nothing more than "my dog ate my homework," minus any specific facts about the dog. The Court cannot accept such a factually and legally defective defense. *Matsushita Elect. Indus. Co. v. Zentih Radio Corp.*, 475 U.S. 574, 587 (1986) ("In the language of [] Rule [56], the nonmoving party must come forward with '*specific facts* showing that there is a genuine issue for trial.'") (emphasis modified from original).

## IV. The term "knowingly" refers to knowledge of one's actions, not knowledge of his legal obligations. And Defendants were indisputably aware of their conduct underlying the statutory violations.

Defendants maintain that they did not "knowingly" violate the RLPHRA, because they claim to have not known of their legal obligation to provide the Order and the Notice of Compliance to Plaintiffs. Affidavit of Barrett Singleton, Doc. 23-1, at PageID 677; Affidavit of Claire Singleton, Doc. 23-2 at PageID 680. This is improbable, given that they received these documents from the Health Department, and the documents themselves contained express warnings of exactly this obligation. Please see below for this language in the documents Defendants received.

**1. Disclosure Requirements for Residential Units**

**Ohio law (section 5302.30 of the Revised Code) requires every person who intends to transfer any residential real property by sale, land installment contract, lease with option to purchase, exchange, or lease for a term of ninety-nine years and renewable forever, to complete and provide a copy to the prospective transferee of the applicable property disclosure forms, disclosing known hazardous conditions of the property, including lead-based paint hazards.**

**Federal law (24 CFR part 35 and 40 CFR part 745) requires sellers and lessors of residential units constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than six years of age resides or is expected to reside in such housing) or any zero-bedroom dwelling to disclose and provide a copy of this report to new purchasers or lessees before they become obligated under a lease or sales contract. Property owners and sellers are also required to distribute an educational pamphlet approved by the United States Environmental Protection Agency and include standard warning language in sales contracts or in or attached to lease contracts to ensure that parents have the information they need to protect children from lead-based paint hazards.**

City Records, Doc. 20-2 at PageID 486.

Ohio law (section 5301.30 of the Revised Code requires every person who intends to transfer any residential real property by sale, land installment contract, lease with option to purchase, exchange, or lease for a term of 99 years and renwable forever, to complete and provide a copy to the prospectve transferee of the applicable property disclosure forms, disclosing known hazardous conditions of the property, including lead-based paint hazards.

Federal law (24 CFR part 35 and 40 CFR part 745) requires sellors and lessors of residential units constructed prior to 1978, except housng (unless any child who is less than 6 years of age resides or is expected to reside in such housing) or any zero-bedroom dwelling to disclose and provide a copy of this report to new purchasers or lesses before they become obligated under a lease or sales contract. Property owners and sellers are also required to distribute an educational pamphlet approved by the United States Environmental Protection Agency and include standard warning language in or attached to leade contracts to ensure that parents have the information they need to protect children from lead-based paint hazards.

*Id.* at PageID 537. And, notably, nowhere in Defendants' affidavits do they allege that they failed to read or were otherwise unaware of the contents of these documents.

But more importantly, Defendants' knowledge of their legal obligations is beside the point. Contrary to Defendants' arguments, Plaintiffs are not required to provide evidence "of the Singletons' knowledge or awareness of the disclosure obligations under the RLPHRA." Def. Memorandum in Opposition, Doc. 24, at PageID

692. In the words of the U.S. Supreme Court: "It has long been settled that 'the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.'" *Elonis v. United States*, 575 U.S. 723, 752 (2015) (quoting *Bryan v. United States*, 524 U.S. 184, 192 (1998)). The reason is that everyone in our society is charged with knowledge of the law. Thus, "ignorance of the law is no excuse." *Id.* So long as the defendant "know[s] the facts that make his conduct fit the definition of the offense," that is enough for a knowing violation. *Id.* (quoting *Staples v. United States*, 511 U.S. 600, 608, n. 3 (1994)). The defendant need not know that those facts amounted to a legal violation. *Id.* Otherwise, a defendant could avoid liability "by simply claiming that he had not brushed up on the law." *Id.* (quoting *Hamling v. United States*, 418 U.S. 87, 123 (1974)).

Neither do Plaintiffs to show evidence of "the Singletons' intent, motive, or state of mind." Def. Memorandum in Opposition, Doc. 24, at PageID 692. The U.S. Supreme Court has specifically held that "the term 'knowingly' does not necessarily have any reference to a culpable state of mind." *Bryan*, 524 U.S. at 192 Thus, under a "knowingly" standard, the "background presumption that every citizen knows the law makes it unnecessary to adduce specific evidence to prove that an evil-meaning mind directed the evil-doing hand." *Id.* at 193.

Thus, Defendants cannot escape liability by claiming they misunderstood the law or had good intent. All that Plaintiffs must show is that Defendants were aware of the facts underlying their statutory violations—namely, that they failed to disclose lead paint hazards and failed to provide Plaintiffs with available lead hazard reports.

There is undisputed evidence on this point: Defendants signed a form that specifically instructed them to make the required disclosures, yet they still failed to do so. First Affidavit of Jennifer Foster, Doc. 20-3, at PageID 554. In response to a question specifically asking about the presence of lead paint hazards, they stated that "[a]ll friction surfaces have been cleared by Cincinnati Health Dept." *Id.* And they then stated that "Seller has no reports pertaining to lead-based paint and/or lead-based paint hazards in the housing." *Id.*; see also Def. Responses, Doc. 20-1, at PageID 471. As explained above, neither statement was true. And their knowledge of these statements is self-evident from their signatures at the bottom of the form, below a certification that they had "reviewed the information above" and certified its accuracy "to the best of their knowledge." First Affidavit of Jennifer Foster, Doc. 20-3, at PageID 554. Either that certification was a lie—which Defendants have not alleged—or they knew of the facts underlying their conduct. There is no middle ground; and either way, Plaintiffs are entitled to summary judgment as to Plaintiffs' knowing violation of the statute.

## V. Proof of damages is not required for a judgment on liability alone.

Defendants also argue that summary judgment is improper because "Plaintiffs have not proved they have incurred any actual damages." Def. Memorandum in Opposition, Doc. 24, at PageID 697. This is a red herring, for multiple reasons.

First, that Plaintiffs have been damaged is obvious even from the facts presented for this motion. By misrepresenting that "all friction surfaces" had been cleared and by withholding the Order and Notice of Compliance, Defendants caused

Plaintiffs to acquire the Property without the material information regarding the risks, responsibilities, and obligations of ownership that federal law requires purchasers to receive before becoming obligated to acquire a pre-1978 residence. Defendants sold Plaintiffs false goods: a home with unremediated lead hazards in the basement and saddled with ongoing maintenance and disclosure obligations, which was represented as a clean house with all lead hazards cleared.

Second, Plaintiffs have not asked the Court to determine any particular dollar amount of damages; on the contrary, they expressly asked that the Court reserve that issue for trial. Motion, Doc. 22, at PageID 666. This is not a novel procedure. "It is well-established that a court may grant partial summary judgment that establishes the existence of certain facts or liability, even though no actual judgment is entered on a claim. * * * Rule 56 clearly empowers a court to enter summary judgment which decides only the issue of liability and allows for a trial on the matter of damages." *Heeter v. J. Peterman Enters., LLC*, No. 2:15-cv-3062, 2017 U.S. Dist. LEXIS 154564, *12 (S.D. Ohio Sep. 21, 2017) (citing *Brauer v. Pannozzo*, 232 F. Supp. 2d 814, 818 (N.D. Ohio 2002)).

Finally, nothing prevents the Court from determining that Defendants are responsible for treble damages, even though the total dollar amount will be determined later. This is because "the damages available under § 4852d are nondiscretionary once plaintiff demonstrates a knowing violation," which has occurred here. *Smith*, 122 F. Supp. 2d at 273.

For all these reasons, the Court should 1) grant partial summary judgment on the issue of liability under Count I of Plaintiffs' complaint and 2) enter an order declaring that Defendants knowingly violated the RLPHRA and will be liable for treble damages in an amount to be determined at trial.

Date: August 20, 2026

Respectfully submitted,

*/s/ J.P. Burleigh*

J.P. Burleigh (0101560)
Sean S. Suder (0078535)
SUDER, LLC
1502 Vine Street, Fourth Floor
Cincinnati, OH 45202
(513) 694-7500
jp@ssuder.com
sean@ssuder.com
*Counsel for Plaintiffs Jesse Brumbaugh and Jennifer Foster*

**CERTIFICATE OF SERVICE**

I hereby certify that foregoing memorandum was electronically filed through CM/ECF this 20th day of August, 2026 and sent by email to the below persons, pursuant to Fed. R. Civ. P. 5(b).

Christopher R. Jones (0092351)
Jeffrey M. Nye (0082247)
SSP LAW CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
(513) 533-2708
(513) 533-2999 (fax)
crj@sspfirm.com
jmn@sspfirm.com
*Counsel for Defendants*
*Barrett Singleton and Claire Singleton*

Respectfully submitted,

*/s/ J.P. Burleigh*
J.P. Burleigh (0101560)
*Counsel for Plaintiffs Jesse*
*Brumbaugh and Jennifer Foster*